488

470 A.2d 1364

COMMONWEALTH of Pennsylvania

v.

Charles FRITZ, Appellant.

COMMONWEALTH of Pennsylvania

v.

Nevin HELFRICH, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 19, 1982.

Filed Dec. 30, 1983.

W. Hamlin Neely, Allentown, for Charles Fritz, appellant.

Charles James Fonzone, Allentown, for Nevin Helfrich, appellant.

William H. Platt, District Attorney, Allentown, for Commonwealth, appellee.

Before JOHNSON, WATKINS and LIPEZ, JJ.

JOHNSON, Judge:

This case began when Greyhound Bus Lines, Inc., Trans-Bridge Lines, Inc., Tri City Coaches, Boro Bus Company, and Bieber Tourways initiated criminal charges against appellants, Charles Fritz and Nevin Helfrich, for "Theft by failure to make the required disposition of funds received," 18 Pa.C.S.A. § 3927.[1] Appellants were tried before a jury and convicted. In this consolidated appeal from that judg-

---

1. The offense is defined in the Crimes Code as follows:

 (a) **Offense defined.**—A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition...

 18 Pa.C.S.A. § 3927(a).

ment of sentence, they contend that there was insufficient evidence of two elements of the offense. We disagree and affirm.

 The test we apply to decide the sufficiency questions in this case is whether, accepting as true all of the evidence reviewed in the light most favorable to the Commonwealth, together with all reasonable inferences therefrom, the jury could have reasonably found that the disputed elements of the offense charged were supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975 (1982).

Our examination of the trial record in the light most favorable to the Commonwealth reveals the following facts. Appellants were partners in the operation of the Allentown Bus Terminal. They entered into separate agreements with the complaining bus companies, whereby they were authorized as agents of these companies to sell their bus tickets. Each of the agreements obligated appellants to remit the proceeds of ticket sales to the complaining bus companies, after deducting the appropriate amount of their commission.[2]

In the month of January, 1979, appellants collected $14,001.60 in receipts from the sale of tickets for the complaining bus companies. They also owed an unspecified amount of arrears from December of 1978. In accordance with appellants' business practice, the ticket receipts collected in January of 1979 were deposited in the bank account of the partnership, from which appellants would pay the expenses of the bus terminal and remit monies to all the bus companies for whom they were agents. Appellants made remittances to the complaining bus companies in the aggregate amount of $16,591.59. Because appellants were in arrears

2. The method of remittance employed by Greyhound and Bieber required appellants to remit the proceeds of ticket sales less the appropriate commission on a daily basis to a bank account controlled exclusively by the bus company. The other bus companies billed appellants at the end of the month for the appropriate amount of ticket proceeds.

from December, the complaining bus companies applied the payments made in January to the December arrears, eliminating them entirely.

After payments in full were made to two bus companies, not involved in this case, the complaining bus companies demanded payment in full of the monies owed them. When appellants were not able to comply, they withdrew their tickets from the terminal, forcing appellants to close down. Representatives of the bus companies and appellants had a meeting wherein appellants were given twenty days to make full payment of the remainder of the monies owed. Appellants were unable to do so. Whereupon, the bus companies pursued the criminal action that is the subject of this appeal.

Section 3927 of the Crimes Code is comprised of the following four elements:

"1. The obtaining of property of another;

2. Subject to an agreement of known legal obligation upon the recipient to make specified payments or other disposition thereof;

3. Intentional dealing with the property obtained as the defendant's own; and

4. Failure to make the required disposition of the property."

Commonwealth v. Crafton, 240 Pa.Super. 12, 16, 367 A.2d 1092, 1094–95 (1976). The section was derived from the Model Penal Code. It was designed to require the actor to meet the obligations under which he undertook to collect the monies or property of another. Where the actor has received funds subject to an obligation to make required payments, Section 3927 "lessens the duties of an agent by permitting him to commingle funds, if he chooses, without penalty." Commonwealth v. Crafton, supra, 240 Pa.Superior Ct. at 18, 367 A.2d at 1095–96. The crucial time under this section is "(a)t the time of failure of the actor to make the required payment or disposition." Id. It is only at the

moment when the required payments are not made that criminal liability attaches. *Id.*

In this appeal, appellants challenge the sufficiency of the evidence as to the 'third or fourth elements listed above, apparently conceding that the evidence sufficiently proved the other two elements. The elements, in dispute in this case, require proof that it was appellants' "conscious object" to violate the agency agreements and deal with the proceeds of the ticket sales as their own and fail to make the required payments of those proceeds to the various bus companies. *Commonwealth v. Austin,* 258 Pa.Super. 461, 470, 393 A.2d 36, 40 (1978).

Both appellants argue that the evidence as to whether they dealt with the proceeds of the ticket receipts as their own was insufficient. At trial both appellants indicated that it was the practice of their partnership to commingle the proceeds of ticket sales into the operating account of their terminal. The commingled funds were available to pay the expenses of the terminal and pay the bus companies. The evidence also indicates that appellants paid their January expenses from this account as well as made substantial remittances to seven bus companies. We view this evidence as sufficient proof that appellants dealt with the proceeds as their own.

The import of the phrase "deals with property as his own" in Section 3927 is that a conversion must occur. Model Penal Code § 223.8, comment c (Official Draft 1962). Section 3927 is not phrased to require proof that a defendant actually *used* the property of another 'as his own. The word *deals* is used in a manner synonymous with the word *treat.* While proof of actual misuse of the ticket receipts, may be preferable, it is not mandatory under the Crimes Code. In commingling the ticket proceeds in their operating account, appellants made them available for use in paying the expenses of their partnership. In doing so, appellants treated the proceeds as their own monies. We regard the commingling of the ticket proceeds by appellants to be an exercise of dominion over, and control of, the

proceeds that is inconsistent with ownership interests of the bus companies. While the evidence of commingling in this case is sufficient itself as proof that appellants dealt with the ticket proceeds as their own, there is additional evidence which obviates the need for such a holding.

In addition to showing that appellants commingled the ticket proceeds in their operating account, the record establishes that appellants *used* the commingled funds in their operating account to pay their operating expenses and to pay the five complaining bus companies and two others not involved in this case. A reasonable inference may be drawn from these circumstances that the ticket proceeds were used to pay appellants' operating expenses and to pay bus companies other than the company to whom the proceeds rightly should have been remitted. Moreover, viewing appellants' testimony in the light most favorable to the Commonwealth, portions of their testimony constitute admissions that the ticket receipts were used to pay the operating expenses of the partnership.[3]

---

**3.** Appellant, Charles Fritz, had the following exchange with Deputy District Attorney Tomsho:

Q. Do you know how much money you owed to all these bus companies, the five that are here today and the other two?

A. I believe its in the neighborhood of $14,000.00.
Q. That's just these five bus companies, isn't that correct?
A. Yes.

Q. What did you do with the $14,000.00?
A. It was deposited in the Merchants National Bank.
Q. For what purpose?
A. For the payment of the bills for the terminal. The operation of the business. The payment of the various sums to the companies.

Q. Whose expenses were you paying with the monies that belonged to the bus companies?
A. The expenses of the operation of the [Allentown Bus Terminal.] N.T., August 14, 1979 at pages 93–97 (RR 98a–102a). During cross-examination of appellant, Nevin Helfrich, the following exchanges occurred with Deputy District Attorney Tomsho:

Q. And you used, did you not sir, the money that you received from the sale of these tickets to pay your own expenses?
A. Yes sir.

■ We therefore hold that the testimony indicating that appellants commingled the ticket receipts and used the commingled funds to pay their operating expenses was sufficient evidence that they dealt with those receipts as if they were their own. Since this evidence alone satisfies but one element of the crime, and does not itself provide a basis for imposing criminal liability, *see Commonwealth v. Crafton, supra,* it remains to be determined whether appellants failed to make the required disposition or payment of the proceeds from the sale of the bus tickets.

■ The element of failure to make the required disposition may be shown without the Commonwealth having to prove that specific monies were not disbursed as they should have been. In *Commonwealth v. Crafton, supra,* this court held that the Commonwealth was permitted by the Crimes Code to prove the failure to disburse by showing the gross amount by which the defendant was short of the full payment required to be disbursed. In adopting this "net shortage" method, we recognized the difficulty in showing the circuitous route of particular monies through the financial thicket. *Commonwealth v. Stoner,* 264 Pa.Super. 136, 399 A.2d 703 (1979).

■ In the instant case, each count of appellants' informations set forth the net amount appellants' disbursements were short. The Commonwealth's witnesses at trial indicated that they conducted an audit of the bus terminal's records to determine the amount of January receipts. All of the bus companies through witnesses acknowledged that appellants made the following collections and remittances in January of 1979:

> Q. After paying these expenses, did you have the money to send to the bus companies as you were supposed to do?
> A. That's when, sir?
> Q. In January?
> A. Of this year?
> Q. Yes.
> A. No sir.
> N.T., August 15, 1979 at pages 115–117 (RR 120a–122a).

| | January Receipts | January Remittances |
|---|---|---|
| Greyhound | $ 9,044.41 | $ 8,858.15 |
| Bieber Tourways | 3,517.21 | 3,127.44 & |
| | | 2,500.00 |
| Boro Bus Company | 145.98 | –0– |
| Trans-Bridge | 660.00 | 1,023.00 |
| Tri City Coaches | 634.00 | 1,083.00 |

With the exception of Boro Bus Company, the companies acknowledged through their witnesses that the remittances indicated above made current the amounts in arrears from December 1978 leaving unpaid the amount of receipts for January ticket sales. All witnesses, except the witness representing Bieber Tourways, testified that appellants did not pay the amounts owed from January 1979 ticket sales. In regard to Bieber Tourways, their witness testified that appellants may have remitted sufficient monies to make current December 1978 arrears and partially pay the amount owed from January 1979 ticket sales. In the case of Boro Bus Company, testimony indicated that appellants did not make any remittances at all in January 1979. Indeed, appellants had not paid Boro Bus Company since September of 1978.[4] The evidence further indicates that a meeting was held between representatives of all the bus companies and appellants. Appellants were given twenty days to fully remit the remaining ticket proceeds to the bus companies. Appellants were unable to do so. This evidence clearly shows that appellants were required to make full remittance of the remaining ticket proceeds to the bus companies. Their inability or failure to do so constitutes proof that appellants did not make the required payments or disposition of the ticket proceeds.

Appellants argue that the evidence failed to prove that they did not make the required payments because they made remittances in January which were applied to debts from December. This argument lacks merit.

It seems clear from the testimony of the Commonwealth's witnesses that the remittances in January were intended as

4. At trial, the information of appellants were amended to allege that the theft of funds received from Boro Bus Company occurred between September 1978 and January 1979.

payments for December. Appellants wrote checks in specific amounts to bring specific amounts of December arrears current. The checks resulted after written and oral inquiries were made of appellants. Appellants cannot now assert that those remittances were intended as payments for amounts owed for January ticket sales. It is worthwhile to note that even if appellants' argument was acceptable, it would not absolve appellants of criminal liability as to Greyhound, Bieber Tourways and Boro Bus Company. For as to Greyhound and Bieber Tourways, appellants had agreed to make daily disbursements and did not.[5] As to Boro Bus Company, appellants did not remit any of the ticket proceeds at all.

We are aware of appellants' argument that they cannot be regarded as *intentionally* dealing with the ticket proceeds as their own and failing to make proper disbursements because the bus companies consented to the terminal's past payment practice of paying past debts from current ticket proceeds. However, there is no evidence that the bus companies mutually agreed to this practice. Indeed, the evidence would tend to support the opposite conclusion, since representatives of the companies phoned and made requests for payment.[6] Appellants have not established that the bus companies consented or even acquiesced in this practice so as to justify appellants in relying upon the bus companies continued acceptance of late disbursements. Absent proof sufficient to establish that the bus companies and appellants had mutually undertaken to modify appellants' contractual obligation to remit the ticket proceeds to the bus companies, appellants' frequent violation of that obligation in the past by their practice of late payments did not alter or affect the obligation itself. Nor was the obligation affected because appellants have not previously been brought before a judicial body to answer for their violations. Appellants' original

5. See footnote 2 *supra.*

6. *See* N.T. August 14 and 15, 1979 at pages 19–20, 47–48, and 55 (RR 24a–25a, 52a–53a, and 60a).

obligation remained intact and the record is devoid of any evidence to justify appellants in believing otherwise. We conclude that appellants, with knowledge of their obligation, consciously chose to disregard them. Thus, appellants acted intentionally within the meaning of the Crimes Code. 18 Pa.C.S.A. § 302(b)(1)(i).

Since the evidence indicates that it was the deliberate business practice of appellants' partnership to commingle the proceeds of the sale of bus tickets for the various bus companies into their operating account, and that, they paid their expenses with commingled funds and then failed to make the required remittances to the bus companies, we affirm appellants' convictions.