637 A.2d 1335

**COMMONWEALTH of Pennsylvania,**

v.

**Jeffrey Scott WOOD, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 6, 1993.

Filed Feb. 3, 1994.

Joseph M. Kecskemethy, Butler, for appellant.

Michael J. Saglimben, Asst. Dist. Atty., Clearfield, for Com., appellee.

Before CAVANAUGH, KELLY and BROSKY, JJ.

KELLY, Judge:

Appellant, Jeffrey Scott Wood, appeals from the judgment of sentence imposed following conviction in a jury trial of one count of theft by failure to make the required disposition of funds, a felony of the third degree,[1] and one count of misapplication of entrusted property, a misdemeanor of the second degree.[2] The appellant was also convicted by the trial court of twenty counts of the summary offense of failure to make application for certificate of title.[3] We reverse appellant's conviction for theft by failure to make the required disposition of funds and remand for a new trial due to trial counsel's ineffectiveness for failing to request the standard character

1. 18 Pa.C.S.A. § 3927.
2. 18 Pa.C.S.A. § 4113.
3. 75 Pa.C.S.A. § 1103.1(d).

witness jury instruction. We reverse appellant's judgment of sentence for misapplication of entrusted property because it was supported by insufficient evidence. We reverse judgment of sentence on six of appellant's convictions for failure to make application for certificate of title due to insufficient evidence, and we vacate the illegal sentences imposed by the trial court on the remaining fourteen convictions and resentence appellant to pay a $50.00 fine for each conviction.

The relevant facts and procedural history of this appeal are as follows. In 1985, appellant, together with four co-investors, Joanne Quashnock, Fabian Bacelli, Delmont Clark and Larry Klingensmith, established a Pennsylvania corporation known as "Life of Leisure Incorporated," ("Life of Leisure") for the purposes of selling recreational vehicles. This corporation was financed through capital contributions by the shareholders and loans which were personally guaranteed by the shareholders. These loans were utilized by "Life of Leisure" to finance its recreational vehicle inventory. The recreational vehicle inventory was provided by Coachman Industries. Appellant served as secretary and treasurer of the corporation. Appellant also served as general manager of the business. While appellant was the sole full-time employee of the business throughout most of its existence, the other shareholders also worked in the business at various times on either a full-time or part-time basis. The shareholders authorized appellant to draw an annual salary of $25,000.00 per year for his service as general manager of "Life of Leisure." The other shareholders who worked in the business were paid either upon an hourly or commission basis for their services to "Life of Leisure."

In his capacity as secretary/treasurer/general manager of "Life of Leisure," appellant was authorized to sign checks on behalf of the corporation. Fabian Bacelli, the president of the corporation, was also authorized to execute corporate checks. The corporation was not successful and at various times the shareholders were required to infuse capital into it in order to keep the business solvent. Additionally, Joanne Quashnock loaned the corporation $9,000.00, and appellant and Fabian

Bacelli forewent their paychecks during periods when business was slow. In order to reimburse Joanne Quashnock for her $9,000.00 loan, and reimburse appellant and Fabian Bacelli for their foregone wages, payments for their respective automobile loans and leases were made out of corporate funds.

During his term as general manager of "Life of Leisure," appellant purchased a Coachman motor home from "Life of Leisure" for $31,493.20. Fabian Bacelli testified that he was aware of appellant's purchase of this vehicle from "Life of Leisure;" however, he was not aware that corporate funds were utilized to make appellant's loan and insurance payments on this vehicle. The vehicle purchased by appellant remained on the "Life of Leisure" premises and was utilized as a rental vehicle. All rental payments on this vehicle were deposited by appellant into the "Life of Leisure" corporate account. This vehicle was also used by appellant to attend a Coachman Industries sales meeting at Disney World in Orlando, Florida, and a family gathering in Ohio. The vehicle was subsequently sold to Edward Heaton for $31,493.20 and the funds realized from this transaction were deposited in the "Life of Leisure" corporate account. (N.T. 12/18/92 p.m. at 57).

Additionally, during appellant's tenure as general manager of "Life of Leisure," corporate checks were utilized from September 1, 1988 to June 1, 1990 to pay for health insurance for himself and his wife. Appellant stated that he took this action with the consent of the shareholders.

Throughout 1989 and 1990, "Life of Leisure's" financial position steadily worsened. During the period of June, 1989 through August, 1990, "Life of Leisure" sold twenty-three recreational vehicles. Appellant, as general manager of the corporation, collected from the purchasers of these vehicles Pennsylvania state sales tax, license title and transfer fees. The fees collected on these twenty-three transactions were deposited by appellant into "Life of Leisure's" corporate account and were never forwarded to the Department of Transportation in Harrisburg as required by law.

By the summer of 1990, the financial position of "Life of Leisure" had deteriorated to such an extent that the funds realized from the sale of the new Coachman vehicles and the used vehicles taken in trade were utilized by appellant to pay other corporate debts. These funds should have been forwarded to Chrysler First, the company which financed "Life of Leisure's" inventory of Coachman vehicles.

On July 20, 1990, appellant, on behalf of "Life of Leisure," entered into an agreement with Paul Ramsey to sell his used recreational vehicle on a consignment basis. The agreement called for Mr. Ramsey to received $3,500.00 from the sale of the vehicle. On August 14, 1990, the vehicle was sold to Patricia Dunlap for $4,065.00. Patricia Dunlap paid for the vehicle with a personal check that was made payable to "Life of Leisure" which was deposited by appellant into "Life of Leisure's" corporate account. (N.T. 12/19/92 p.m. at 86); (Commonwealth's Exhibit 17 (Patricia Dunlap File)); (Commonwealth' Exhibit 53). On August 19, 1990, appellant gave up his position as general manager of "Life of Leisure" and went to Philadelphia to begin three weeks of training for a position he had taken with an insurance company. Upon appellant's departure, Joanne Quashnock and Betty Gearhart ran the business; however, only Ms. Quashnock assumed control over the corporate checking account. While appellant was in Philadelphia, Paul Ramsey appeared at the offices of "Life of Leisure" to inquire about the $3,500.00 he was owed for the sale of his vehicle. (N.T. 12/17/92 p.m. at 88–89). On August 21, 1990, appellant confirmed "Life of Leisure's" $3,500.00 obligation to Paul Ramsey via a telephone call to Betty Gearhart from Philadelphia. (N.T. 12/19/93 a.m. at 90). Shortly thereafter, Ms. Quashnock had the locks changed to "Life of Leisure's" office, thus effectively barring appellant from access to the premises. In October of 1990, Joanne Quashnock mailed Paul Ramsey a check for $500.00. (N.T. 12/17/92 p.m. at 85–91). Mr. Ramsey never received the remainder of the money he was owed.

On October 25, 1990, State Trooper Robert Cessna travelled to "Life of Leisure's" offices to investigate a complaint that he

had received, regarding a vehicle title and registration which had not been received, from a person who had purchased a recreational vehicle from "Life of Leisure." As a result of this investigation, appellant was charged with eight counts of theft by unlawful taking, eight counts of theft by deception, three counts of theft by failure to make the required disposition of funds, and two counts of misapplication of entrusted property. Appellant was also charged with twenty counts of the summary offense of failure to make application for certificate of title.

A jury trial was held. At trial, the Commonwealth presented the testimony of two state troopers, a representative of Coachman Industries, shareholders and employees of "Life of Leisure" and several customers of "Life of Leisure." The Commonwealth also presented as evidence business records from "Life of Leisure" including two unsigned sets of 1988 and 1989 corporate income tax returns.

In his defense, appellant relied upon his own testimony and the testimony of State Trooper John J. Ward, a witness who had also testified for the Commonwealth. Appellant also presented two character witnesses, Sergeant Timothy Fennell of the Butler Police Department and his wife, Constance Wood. Despite the introduction of character evidence, appellant's trial counsel did not request that the standard character witness instruction be included in the trial court's points for charge to the jury. After deliberation, the jury acquitted appellant of all charges except one count of theft by failure to make the required disposition of funds and one count of misapplication of entrusted property. The appellant's theft by failure to make the required disposition of funds conviction resulted from his failure, as general manager of "Life of Leisure," to forward $11,046.00 in sales tax and vehicle transfer fees, collected from customers, to the Department of Transportation; while his misapplication of entrusted property conviction stemmed from the failure to forward to Paul Ramsey the entire $3,500.00 he was entitled to receive for the sale of his recreational vehicle. The trial court also convicted appellant of all twenty summary counts of failure to make

application for certificate of title and immediately sentenced appellant to pay a $100.00 fine for each conviction and serve consecutive terms of ten days imprisonment for each conviction. Appellant's post-verdict motions and supplemental post-verdict motions were denied.[4] Appellant was sentenced to one to three years imprisonment and a $1,000.00 fine for his theft by failure to make the required disposition of funds conviction while receiving a concurrent one to two year sentence and a $1,000.00 fine for his misapplication of entrusted property conviction. This timely appeal followed.

On appeal, appellant raises the following issues for our review:

I. WHETHER THE HONORABLE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION IN ARREST OF JUDGMENT, IN THAT THE COMMONWEALTH HAD FAILED TO PROVE BEYOND A REASONABLE DOUBT EVERY ELEMENT OF THE CRIMES ALLEGED.

II. WHETHER THE HONORABLE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR NEW TRIAL, WHERE THE COURT DID NOT ALLOW THE APPELLANT'S TRIAL COUNSEL TO QUESTION WITNESS PAUL J. NOVOTNY OF COACHMEN INDUSTRIES, WITH REGARD TO NEGOTIATIONS IN PROGRESS WITH THE REMAINING OFFICER/SHAREHOLDERS WHO WERE PERSONAL GUARANTORS OF THE COACHMEN CREDIT LINE, REGARDING THEIR OWN DEBTS TO COACHMAN, WHERE SAID GUARANTORS TESTIFIED IN

4. In the post-trial motions, trial counsel asserted in a motion for arrest of judgment that the Commonwealth had failed to present sufficient evidence to support all of appellant's convictions and that the sentences imposed for appellant's summary convictions were illegal. Trial counsel also claimed in a motion for a new trial that the trial court improperly limited his cross-examination of Paul Novotny and improperly admitted unauthenticated corporate income tax returns into evidence. Appellant's new counsel asserted in supplemental post-verdict motions that trial counsel was ineffective for failing to request the standard character witness instruction.

THE COMMONWEALTH'S CASE IN CHIEF AGAINST THE APPELLANT.

III. WHETHER THE HONORABLE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR NEW TRIAL, WHERE SAID COURT ALLOWED INTO EVIDENCE, OVER DEFENSE RELEVANCY AND HEARSAY OBJECTIONS, TWO SETS OF TAX RETURNS FOR LIFE OF LEISURE CORPORATION.

IV. WHETHER APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST THE STANDARD CHARACTER WITNESS INSTRUCTION TO THE JURY, WHERE CHARACTER WITNESSES TESTIFIED IN THE APPELLANT'S CASE, AND WHETHER SUCH INEFFECTIVENESS PREJUDICED THE APPELLANT AT TRIAL.

(Appellant's Brief at 3–4).

 At the outset, we note that the trial court failed to file, in accordance with Pa.R.App.P. 1925(a), an opinion in support of appellant's judgment of sentence. Under normal circumstances, because the issues presented in this appeal are of a complex nature, we would remand the case to the trial court for the preparation of an opinion. *See Commonwealth v. Kinsel,* 403 Pa.Super. 67, 588 A.2d 34 (1991). However, due to the unfortunate death of the trial judge, the Honorable Joseph S. Ammerman, on October 14, 1993, it would be a pointless exercise to remand this particular case to the trial court for the preparation of opinion. *See Commonwealth v. Blady,* 298 Pa.Super. 82, 84 n. 1, 444 A.2d 670 n. 1 (1982). Accordingly, we will review the issues raised by appellant.

In his first issue on appeal, appellant contends that the trial court erred by denying him an arrest of judgment for both his conviction of theft by failure to make the required disposition of funds and his conviction for misapplication of entrusted property. Appellant maintains that the Commonwealth failed to present sufficient evidence that proved beyond a reasonable

doubt that he committed the offenses of theft by failure to make the required disposition of funds and misapplication of entrusted property. Appellant argues, regarding his theft by failure to make the required disposition of funds conviction, that the evidence presented by the Commonwealth was insufficient because it failed to prove an essential element of the crime, *i.e.* that appellant had appropriated, for his own use, any of the funds that were supposed to have been paid over to the Department of Transportation. Additionally, appellant asserts that his misapplication of entrusted property conviction was supported by insufficient evidence because, after appellant had sold Paul Ramsey's recreational vehicle, he deposited the proceeds from the sale into the corporate account and departed for Philadelphia to attend school. Appellant claims that it was Joanne Quashnock who failed to forward to Mr. Ramsey the full $3,500.00 to which he was entitled to from the sale of his recreational vehicle. Finally, appellant claims that the Commonwealth failed to present sufficient evidence regarding his summary convictions for failure to make application for certificate of title, pursuant to 75 Pa.C.S.A. § 1103.1(d), because the obligation to make the required application was a corporate duty of the dealer, "Life of Leisure," and not a personal obligation imposed upon appellant.

In reviewing the sufficiency of the evidence to support a conviction, the evidence must be viewed in the light most favorable to the Commonwealth, and the Commonwealth is entitled to all favorable inferences which may be drawn from the evidence. *Commonwealth v. Hanes,* 361 Pa.Super. 357, 361, 522 A.2d 622, 623–24 (1987); *Commonwealth v. Reddix,* 355 Pa.Super. 514, 519, 513 A.2d 1041, 1045 (1986); *Commonwealth v. Duffy,* 355 Pa.Super. 145, 154–55, 512 A.2d 1253, 1260–61 (1986). If a jury could have reasonably determined from the evidence adduced that all of the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict. *Commonwealth v. Gerulis,* 420 Pa.Super. 266, 273, 616 A.2d 686, 689 (1992);

*Commonwealth v. Berkowitz,* 415 Pa.Super. 505, 515, 609 A.2d 1338, 1343 (1992).

In order to find an individual guilty of theft by failure to make required disposition of funds received,[5] the Commonwealth must prove four elements beyond a reasonable doubt. *Commonwealth v. Van Nest,* 517 Pa. 44, 50, 534 A.2d 473, 476 (1987); *Commonwealth v. Stein,* 401 Pa.Super. 518, 523, 585 A.2d 1048, 1050 (1991). The Commonwealth must prove that the defendant (1) obtained the property of another; (2) subject to an agreement or known legal obligation upon the receipt to make specific payments or other disposition thereof; (3) *intentionally* dealt with the property obtained as if it were the defendant's own; and (4) failed to make the required disposition of the property. *Commonwealth v. Ohle,* 503 Pa. 566, 581, 470 A.2d 61, 69 (1983), *cert. denied,* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986). *See also Commonwealth v. Van Nest, supra; Commonwealth v. Edwards,* 399 Pa.Super. 545, 559, 582 A.2d 1078, 1085–86 (1990), *appeal denied,* 529 Pa. 640, 600 A.2d 1258 (1991); *Commonwealth v. Fritz* 323 Pa.Super. 488, 493, 470 A.2d 1364, 1366 (1983); *Commonwealth v. Crafton,* 240 Pa.Super. 12, 16, 367 A.2d 1092, 1094–95 (1976), *opinion corrected,* 410 Pa.Super. 390, 599 A.2d 1353 (1991).

■■■ The statute proscribing theft by failure to make the required disposition of funds received is designed to require the actor to meet the obligation under which he undertook to collect monies or property of another. *Commonwealth v. Fritz, supra,* 323 Pa.Super. at 493, 470 A.2d at 1366. Under this statute, an agent who has received funds subject to an obligation to make the required payments may commingle funds if he or she so chooses without penalty as long as the

5. 18 Pa.C.S.A. § 3927 provides as follows:

A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

obligation for which the money or property is entrusted is met in a timely fashion. *Id.,* 323 Pa.Super. at 493, 470 A.2d at 1366; *Commonwealth v. Crafton, supra,* 240 Pa.Super. at 18, 367 A.2d at 1095. The phraseology utilized in 18 Pa.C.S.A. § 3927(a), that a person is guilty of theft by failure to make required disposition of funds if he "deals with property as his own," does not require that the defendant actually use the property of another. Rather the word "deals" in the context of this statute means that the actor treated the property or funds of another, designated to be used for a specific purpose, as if it were his or her own property. *Commonwealth v. Fritz, supra,* 323 Pa.Super. at 496, 470 A.2d at 1367; *Commonwealth v. Crafton, supra,* 240 Pa.Super. at 19, 367 A.2d at 1096.

It is well settled that "individuals are subject to indictment for acts done under the guise of a corporation where the individual personally so dominated and controlled the corporation as to immediately direct its action." *Commonwealth v. Miller,* 414 Pa.Super. 56, 60–61, 606 A.2d 495, 497 (1992) (citing *Commonwealth v. Stone,* 187 Pa.Super. 225, 229, 144 A.2d 614, 616 (1958), *affirmed,* 395 Pa. 584, 150 A.2d 871 (1959)). *See also Commonwealth v. Shafer,* 414 Pa. 613, 202 A.2d 308 (1964). Accordingly, the mere fact that money that had been paid over to the defendant for a specific purpose was applied to the benefit of a corporation instead of defendant's personal use would be immaterial to his guilt for theft by failure to make the required disposition of funds. *See Commonwealth v. Stone, supra,* 187 Pa.Super. at 229, 144 A.2d at 616 (case dealing with fraudulent conversion under the old section 4834 of the Penal Code of 1939, which present section 3927 replaces). *See also Commonwealth v. Edwards, supra* (evidence sufficient where construction contractor utilized construction mobilization funds to pay off old corporate debts); *Commonwealth v. Fritz, supra* (partners' utilization of bus ticket receipts which were supposed to be paid over to bus company on a monthly basis to pay partnership's operating expenses was sufficient evidence that partners dealt with bus ticket receipts as if they were their own).

■ Our review of the evidence in a light most favorable to the Commonwealth reveals that it successfully met its burden of proof regarding all four elements of the crime of theft by failure to make the required disposition of funds received. The evidence elicited at trial indicates that the corporation, "Life of Leisure," was so thoroughly dominated by appellant in his capacity as secretary/treasurer/general business manager of the business and custodian of the corporate checking accounts that he was immediately able to direct its action. The evidence also reveals that appellant in his capacity as general business manager received $11,056.00 in state sales tax, license, transfer and registration fees from various customers which were supposed to have been paid over to the Department of Transportation. The evidence further shows that appellant failed to make the required disposition of these funds by paying them over to the Department of Transportation. Rather, he dealt with these funds as if they were his own by using them to pay off corporate debts. Therefore, appellant's contention that the Commonwealth failed to sustain its burden of proof regarding his theft by failure to make the required disposition of funds is without merit.

Next, appellant contends that the Commonwealth failed to present sufficient evidence to sustain his conviction for misapplication of entrusted property. Appellant argues that the statute under which he was convicted, 18 Pa.C.S.A. § 4113, clearly requires that the defendant apply or dispose of the property that was entrusted to him as a fiduciary in a manner which he knew was unlawful and involved substantial risk of loss or was detrimental to the owner of the property. Appellant asserts that because he deposited the purchaser of Paul Ramsey's recreational vehicle's personal check for $4,065.00 into the corporate account, he did not dispose of the proceeds from this sale in a manner which was unlawful and involved a substantial risk of loss to the owner. Thus, appellant maintains that because the decision not to pay Paul Ramsey the full amount of money he was entitled to receive from the sale of recreational vehicle was made by Joanne Quashnock and not by him, the Commonwealth's evidence was insufficient to

convict him of misapplication of entrusted property. We agree.

The statute prohibiting the misapplication of entrusted property, 18 Pa.C.S.A. § 4113,[6] is violated when the defendant applies or disposes of property that has been entrusted to him as a fiduciary in a manner that he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property. *Commonwealth v. Edwards, supra,* 399 Pa.Super. at 562, 582 A.2d at 1087; *Commonwealth v. Schreiber,* 319 Pa.Super. 367, 376–77, 466 A.2d 203, 207 (1983). Therefore, in order to sustain a conviction for misapplication of entrusted property, the Commonwealth must prove that: (1) the defendant was a fiduciary; (2) the defendant applied or disposed of the entrusted property in a manner which was unlawful and involved either substantial risk of loss or was detrimental to the owner of the property. *Commonwealth v. Schreiber, supra,* 319 Pa.Super. at 375–76, 466 A.2d at 207.

Instantly, the Commonwealth has proven that appellant was a fiduciary for the purposes of 18 Pa.C.S.A. § 4113 because he received Paul Ramsey's recreational vehicle on consignment for the stipulated purpose of selling this vehicle for at least $3,500.00 and was obligated to turn that amount over to Mr. Ramsey upon the completion of the sale. *See* 1 Pa.C.S.A. § 1921; *Commonwealth v. Edwards, supra* (a fiduciary is defined as an executor, administrator, guardian, committee, receiver, trustee, assignee for the benefit of creditors, and any other person acting in any similar capacity). *See also Commonwealth v. Harris,* 168 Pa. 619, 32 A. 92 (1895); *Commonwealth v. Spudis,* 34 Pa.Super. 3 (1907) (a consignee is a person to whom merchandise or personal property of any kind is committed, the title to the property remaining in the

---

6. 18 Pa.C.S.A. § 4113 provides as follows:

A person commits an offense if he applies or disposes of property that has been entrusted to him as a fiduciary, or property of the government or of a financial institution, in a manner which he knows is unlawful and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted.

consignor, with power in the consignee to sell the property for and on account of the consignor).

The Commonwealth, however, has failed to present sufficient evidence to prove that appellant personally applied or disposed of the proceeds from the sale of Paul Ramsey's recreational vehicle in a manner which was unlawful and involved either substantial risk of loss or was detrimental to Paul Ramsey. Our review of the evidence reveals that appellant sold Mr. Ramsey's recreational vehicle to Patricia Dunlap on August 14, 1990 for $4,065.00. Appellant then deposited Patricia Dunlap's personal check for $4,065.00 which was made payable to "Life of Leisure" into "Life of Leisure's" corporate account. Soon thereafter, on August 19, 1990, appellant gave up his position as general manager of "Life of Leisure" and went to Philadelphia to begin training for a position he had taken with an insurance company. After appellant's departure, Joanne Quashnock and Betty Gearhart took over the responsibility for running the day to day affairs of the business with Ms. Quashnock taking control over the corporate checking accounts. The evidence is undisputed that on August 21, 1990, Paul Ramsey appeared at the offices of "Life of Leisure" to inquire about the $3,500.00 he was owed for the sale of his vehicle. The evidence is also uncontradicted that both Ms. Gearhart and Ms. Quashnock became fully aware of "Life of Leisure's" $3,500.00 obligation to Paul Ramsey at that time. Finally, the unconverted evidence reveals that the decision to utilize the funds from the sale of the vehicle that were deposited into the corporate account by appellant to pay other corporate debts and to pay Paul Ramsey only $500.00 of the $3,500.00 he was entitled to receive was made by Joanne Quashnock, not appellant. Thus, the Commonwealth has failed to present sufficient evidence to prove that appellant disposed of the proceeds from the sale of Paul Ramsey's recreational vehicle in a manner which was unlawful and involved substantial risk of loss or was detrimental to Mr. Ramsey. Therefore, we are compelled to reverse appellant's conviction for misapplication of entrusted property.

In the final portion of his first issue on appeal, appellant challenges the sufficiency of the evidence regarding his conviction of twenty counts of failure to make application for certificate of title pursuant to 75 Pa.C.S.A. § 1103.1(d).[7] Appellant argues that the legal obligation to forward the necessary funds and paperwork to the Department of Transportation was a corporate obligation of "Life of Leisure" and not a personal obligation of his. Thus, the evidence presented by the Commonwealth was insufficient to sustain his conviction of twenty counts of failure to make application for certificate of title. Appellant also asserts that he was the victim of an illegal sentence because the trial court imposed a sentence of ten days imprisonment for each count to be served consecutively and a one hundred dollar fine for each count when the statute carried no provision for incarceration and set the maximum fine for violations at $50.00.

As stated earlier, "individuals are subject to indictment for acts done under the guise of a corporation where the individual personally so dominated and controlled the corporation as to immediately direct its action." *Commonwealth v. Miller, supra* (citing *Commonwealth v. Stone, supra*). Pursuant to 75 Pa.C.S.A. § 1103.1(d), a dealer is required to mail or deliver the application for certificate of title for each vehicle to the Department of Transportation within twenty days of the sale. The statute also states that any dealer violating this subsection is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $50.00 for each violation. 75 Pa.C.S.A. § 1103.1(d). Economic hardship alone is insufficient to excuse a dealer's violation of the section requiring delivery of a properly signed certificate of title to the Department of Transportation within twenty days of the

7. 75 Pa.C.S.A. § 1103.1(d) provides in pertinent part as follows:

If the application refers to a vehicle purchased from a dealer, the dealer shall mail or deliver the application to the department within 20 days of the date of purchase. The application shall contain the names and addresses of any lienholders in order of priority and the amounts and the dates of the security agreements and be assigned by the dealer to the owner and signed by the owner. Any dealer violating this subsection is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $50 for each violation.

sale of the vehicle. *See Ridge AMC/Jeep/Renault Inc. v. Commonwealth of Pennsylvania,* 103 Pa.Cmwlth. 174, 520 A.2d 515, *appeal denied,* 515 Pa. 602, 528 A.2d 958 (1987).

As we previously held regarding appellant's theft by failure to make the required disposition of funds conviction, the evidence presented by the Commonwealth was sufficient to prove that until his departure on August 19, 1990, appellant so thoroughly dominated and controlled the corporation as to render himself individually liable for acts done under the guise of the corporation. *See Commonwealth v. Shafer, supra; Commonwealth v. Miller, supra; Commonwealth v. Stone, supra.* Thus, appellant may not escape personal liability for the failure of "Life of Leisure" to mail or deliver the applications for certificates of title that were due on or before August 19, 1990 to the Pennsylvania Department of Transportation. The fact that the corporation was experiencing severe financial difficulties during the time sequence, May 14, 1990 to August 19, 1990, in which fourteen of the violations of 75 Pa.C.S.A. § 1103.1(d) occurred does not excuse appellant's duty to comply with the statute. Thus, the Commonwealth presented sufficient evidence to convict appellant for violating 75 Pa. C.S.A. § 1103.1(d) for fourteen counts, citation numbers Y024021 through Y024029, Y024032 through Y024034, Y024039 and Y024040.[8]

The Commonwealth, however, failed to present sufficient evidence regarding citation numbers Y024030, Y024031, Y024036 and Y024037 as the sale of the vehicles corresponding to these citations occurred after appellant's August 19, 1990 departure from "Life of Leisure" and his complete domination of the corporation ceased when Betty Gearhart and Joanne Quashnock assumed day to day control of the corporation.

8. We note that 75 Pa.C.S.A. § 1103(d) which required a dealer to mail or deliver the application of certificate of title to Department of Transportation within ten days of the sale of the vehicle and imposed a $50.00 fine for each violation was repealed on July 10, 1990 and immediately replaced by 75 Pa.C.S.A. § 1103.1(d) which requires a dealer to mail or deliver the application of certificate of title to the Department of Transportation within twenty days and imposes a $50.00 fine for each violation.

Thus, appellant cannot be held personally liable for "Life of Leisure's" failure to apply for these specific certificates of title for the vehicles sold after his departure. The responsibility for the failure to apply for these certificates of title must fall on the corporation. Additionally, although the vehicles corresponding to citation numbers Y024035 and Y024038 were sold during the time period that appellant was still thoroughly in control of all corporate affairs, August 2, 1990 and August 14, 1990, respectively, the dates that "Life of Leisure" was responsible for making the required application for these certificates of title, August 22, 1990 and September 3, 1990, arose after appellant no longer so thoroughly dominated and controlled the corporation as to render himself individually liable for its failure to apply for these particular certificates of title. Therefore, while the trial court properly held appellant personally liable for fourteen counts of failure to make application for certificate of title which occurred during the time he dominated the corporation, it committed error by imposing personal liability upon appellant for the six transactions where the last date for application arose after appellant had relinquished complete control of the corporation. Thus, appellant's convictions for citation numbers: Y024030, Y024031, Y024035, Y024036, Y024037, and Y0242038 are reversed.

 Next, we are called upon to determine whether the sentence imposed by the trial court for the remaining fourteen counts of failure to make application for certificate of title are legal. The issue of the legality of these sentences was raised by appellant's brief in the statement of the case section and is not mentioned again in the body of his brief. While we will not ordinarily properly frame an issue for appellate review, we will do so in this case because a challenge to the legality of sentence is an issue which cannot be waived. *See Commonwealth v. Greer*, 382 Pa.Super. 127, 133 n. 1, 554 A.2d 980, 983 n. 1 (1989); *Commonwealth v. Button*, 332 Pa.Super. 239, 243–44, 481 A.2d 342, 348 (1984). The trial court sentenced appellant to pay a $100.00 fine and serve ten days imprisonment, consecutively, for each violation of 75 Pa.C.S.A. § 1103.-1(d). Appellant argues this is an illegal sentence because the

statute specifically sets the penalty for its violation of $50.00 and carries no provision for the incarceration of offenders. Thus, appellant asserts that his sentence is illegal and must be vacated. We agree.

Although sentencing courts are vested with great discretion, the discretion and deference afforded them is not unfettered; appellate courts retain the power and the duty to vacate sentences imposed where an abuse of discretion has been committed. *Commonwealth v. Smithton,* 429 Pa.Super. 55, 59, 631 A.2d 1053, 1055 (1993). To constitute an abuse of discretion a sentence must either exceed the statutory limits or be patently excessive. *Commonwealth v. Catanch,* 398 Pa.Super. 466, 581 A.2d 226 (1990); *Commonwealth v. Button,* 332 Pa.Super. 239, 481 A.2d 342 (1984). In imposing sentence, the trial court must not commit an error of law. *Commonwealth v. Edrington,* 490 Pa. 251, 416 A.2d 455 (1980); *Commonwealth v. Franklin,* 301 Pa.Super. 17, 446 A.2d 1313 (1982). A court may not impose a sentence that exceeds the maximum penalty prescribed by statute. *Commonwealth v. Edrington, supra; Commonwealth v. Grier,* 410 Pa.Super. 284, 599 A.2d 993 (1991); *Commonwealth v. Burtner,* 307 Pa.Super. 230, 453 A.2d 10 (1982).

An act of the legislature which imposes penal sanctions for the violation of its provisions must be strictly construed. *Commonwealth v. Elliot,* 410 Pa.Super. 354, 599 A.2d 1335 (1991); *Commonwealth v. Nernberg,* 402 Pa.Super. 411, 587 A.2d 317 (1991). If a statute is clear and unambiguous, the judiciary must read its provisions in accordance with their plain meaning and common usage even where a penal statute is at issue and a straightforward application of the statute would subject a defendant to criminal liability. *Commonwealth v. Becker,* 366 Pa.Super. 54, 530 A.2d 888 (1987), *appeal denied,* 520 Pa. 586, 551 A.2d 213 (1988). When one statute specifically proscribes certain conduct, then another general statute carrying more severe punishment will be inapplicable, it being assumed that the legislature intended the specific statute to control. *Commonwealth v. Cannon,* 297

Pa.Super. 106, 116, 443 A.2d 322, 326 (1982). Generally, the term "shall" is construed as creating a mandatory duty and only rarely in matters of time or form is the term construed as creating only a discretionary or directory duty. *Commonwealth v. Ferguson*, 381 Pa.Super. 23, 552 A.2d 1075 (1988). The use of the word "shall" in a statute when referring to the obligation of the sentencing court is intended to convey a lack of discretion of the sentencing court. *Commonwealth v. Filius*, 346 Pa.Super. 434, 499 A.2d 1078 (1985).

Instantly, the Legislature denoted the violation of 75 Pa.C.S.A. § 1103.1(d) as a summary offense. Under normal circumstances, the statutory maximum for a person convicted of a summary offense is ninety days imprisonment. *See* 18 Pa.C.S.A. § 1105. However, 75 Pa.C.S.A. § 1103.1(d) specifically provides that any dealer violating this subsection *shall* be sentenced to pay a fine of $50.00 for each violation. Because the legislature has set a specific penalty for violations of this subsection which sentencing courts are obligated to impose, the trial court inflicted illegal sentences upon appellant when it fined him in excess of the amount set out in the statute for each violation and imposed terms of consecutive incarceration for each violation when the statute does not call for violators to be imprisoned. Therefore, the sentences imposed by the trial court for appellant's fourteen remaining convictions for violating 75 Pa.C.S.A. § 1103.1(d) are illegal sentences and cannot stand. Accordingly, in the interest of judicial economy, we vacate these sentences and resentence appellant, in compliance with the specific terms of 75 Pa.C.S.A. § 1103.1(d) to pay a $50.00 fine for each conviction. *See Commonwealth v. Perdue*, 387 Pa.Super. 473, 490, 564 A.2d 489, 497 (1989); *Commonwealth v. Walker*, 286 Pa.Super. 239, 241–42, 428 A.2d 661, 662 (1981) (Superior Court has power to amend sentence provided sentence is not increased).

In his second issue on appeal, appellant contends that the trial court erred by refusing to permit him to cross examine Paul Novotny, a representative of Coachman Industries, regarding whether the settlement negotiations between

Coachman Industries and "Life of Leisure" shareholders, Joanne Quashnock and Fabian Bacelli, for their personal guarantees of payment of "Life of Leisure's" line of credit with Coachman's Industries would be influenced by their testimony at appellant's trial. Appellant argues that the trial court's refusal to permit him to proceed with this line of questioning precluded him from revealing Ms. Quashnock's and Mr. Bacelli's personal motivations for testifying against him at trial. Thus, appellant asserts that he was substantially prejudiced by the trial court's evidentiary ruling.

The scope and manner of cross-examination is within the sound discretion of the trial judge whose decision will not be overturned absent an abuse of discretion. *Commonwealth v. Birch*, 532 Pa. 563, 616 A.2d 977 (1992); *Commonwealth v. Tyler*, 402 Pa.Super. 429, 587 A.2d 326 (1991). Ordinarily, the scope of cross-examination of an adverse witness is limited to matters brought out on direct examination. *Commonwealth v. Ennis*, 394 Pa.Super. 1, 574 A.2d 1116 (1990); *Commonwealth v. Lore*, 338 Pa.Super. 42, 487 A.2d 841 (1984). When the obvious purpose of cross-examination is to develop a defense, the trial court does not abuse its discretion when limits are placed upon its scope especially when the defendant is not ultimately precluded from presenting the relevant evidence at some other point during the course of the trial. *Commonwealth v. Skibicki*, 402 Pa.Super. 160, 586 A.2d 446, *appeal denied*, 528 Pa. 637, 598 A.2d 993 (1991); *Commonwealth v. Lobel*, 294 Pa.Super. 550, 440 A.2d 602 (1982).

Our review of Paul Novotny's testimony on direct and redirect examination focused upon the failure of "Life of Leisure" to turn over the money it received from the sale of the new Coachman vehicles to the finance company, Chrysler First, and that due to this failure on "Life of Leisure's" part, Coachman Industries was compelled under its financing arrangement with "Life of Leisure" to make Chrysler First whole on the deficiency. Paul Novotny's testimony did not, either on direct examination or re-direct examination, venture into the area of the personal guarantees on all loans the

shareholders had given Coachman Industries as part of the financing arrangements. On recross-examination, the trial court permitted appellant the latitude to question the witness as to the personal guarantees that the shareholders had executed in favor of Coachman Industries and the fact that Coachman Industries was pursuing Joanne Quashnock and Fabian Bacelli for the funds it had to expend to pay Chrysler First. The trial court, however, refused to permit appellant to question the witness regarding the negotiations between Coachman Industries and Ms. Quashnock and Mr. Bacelli for payment because this line of questioning was too far beyond the scope of the witness' testimony on direct and re-direct examination. Moreover, at this point in the trial, neither Ms. Quashnock, nor Mr. Bacelli had testified; thus, the trial court's limitation of appellant's cross-examination did not preclude him subsequently eliciting from these witnesses the evidence he sought to present regarding their personal motivations for testifying against him.

Appellant, in his third issue on appeal, posits that the trial court committed error by permitting two sets of "Life of Leisure's" tax returns from 1988 and 1989 to be admitted into evidence. Appellant contends that these unsigned tax returns had no probative value because the Commonwealth's only purpose for offering these documents as evidence was to show "what kind of shape the business was in." Appellant also argues that the unsigned 1988 and 1989 corporate tax returns were improperly admitted over his hearsay objection because the witness/accountant who was questioned about the tax returns only testified about what they appeared to be and no corporate spokesperson from "Life of Leisure" was offered to authenticate the unsigned corporate tax returns. Thus, appellant asserts that the documents could not be admitted under the business records exception to the hearsay rule because the Commonwealth failed to properly authenticate the documents.

Evidentiary rulings are committed to the sound discretion of the trial court and will not be reversed absent a clear abuse of that discretion. *Commonwealth v. Foy*, 531 Pa. 322, 612 A.2d 1349 (1992); *Commonwealth v. Holloway*, 524

Pa. 342, 572 A.2d 687 (1990). To determine relevancy, the test is whether the evidence sought to be introduced tends to establish a material fact or make a fact at issue more or less probable. *Commonwealth v. Cohen,* 529 Pa. 552, 605 A.2d 1212 (1992); *Commonwealth v. Jermyn,* 516 Pa. 460, 533 A.2d 74 (1987). Relevant evidence is nonetheless rendered inadmissible if it violates the hearsay rule or any exclusionary rule of evidence. *Commonwealth v. Lippert,* 454 Pa. 381, 311 A.2d 586 (1973). Evidence which does not derive its value solely from the credibility of the witness but rests also on the veracity of another person is "hearsay" and is ordinarily inadmissible. *U.S. v. Campanaro,* 63 F.Supp. 811 (1945). The reasons for excluding hearsay evidence are that it is not given under oath, the declarant is not personally present at trial so that his or her demeanor may be observed and the declarant is not subject to cross-examination. *Commonwealth v. White,* 271 Pa.Super. 552, 554, 414 A.2d 391, 392 (1979).

The purpose of [the] Uniform Business Records as Evidence Act is to create an additional exception to the hearsay rule in circumstances where a record of an act, a condition or an event was made in the regular course of business, at or near the time of the act, condition or event and where the sources of information, method and time of preparation were such as to justify its admission. *Joseph v. Krull Wholesale Drug Co.,* 147 F.Supp. 250 (E.D.Pa.1956), *affirmed,* 245 F.2d 231 (3d Cir.1957). The question of whether documents should be admitted under the "business records" exception to the hearsay rule is within the discretionary power of the trial court provided such discretion is exercised within the Uniform Business Records as Evidence Act. *Thomas v. Allegheny & Eastern Coal Co.,* 309 Pa.Super. 333, 340, 455 A.2d 637, 640 (1982). It is not essential under the Uniform Business Records as Evidence Act to produce either the person who made the entries or the custodian of the record at the time the entries were made. *In re Indyk's Estate,* 488 Pa. 567, 573, 413 A.2d 371, 373 (1979). Moreover, the law does not require that a witness qualifying business records even have a personal knowledge of the facts report-

ed in the business record. *Wayne County Bd. of Assessment v. Federation of Jewish Philanthropies,* 43 Pa. Cmwlth. 508, 403 A.2d 613 (1979). As long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness for the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence. *In re Indyk's Estate, supra,* [488 Pa.] at 573, 413 A.2d at 373.

*Boyle v. Steiman* 429 Pa.Super. 1, 14, 631 A.2d 1025, 1032–33 (1993). However, without evidence of the sources of the information in the alleged business records and the time and manner of their preparation, the "business records" hearsay exception does not apply. *In re Involuntary Termination of Parental Rights,* 449 Pa. 543, 550, 297 A.2d 117, 121 (1972); *Commonwealth v. Perdok,* 411 Pa. 301, 306, 192 A.2d 221, 224 (1963).

█ Instantly, in addition to the charges discussed above, appellant was tried and acquitted of eight counts of theft by unlawful taking and eight counts of theft by deception. The Commonwealth presented the two sets of corporate income tax returns from 1988 and 1989, each set carrying a gross revenue discrepancy of more than $40,000.00, to prove that appellant was "playing with the figures" to cover his alleged embezzlement scheme. Thus, the evidence was relevant to the theft by unlawful taking and theft by deception charges and the trial court properly refused to exclude the evidence on the basis of appellant's relevance objection.

█ While the conflicting sets of corporate income tax returns from the years 1988 and 1989 were relevant, these documents were hearsay evidence which was not admissible pursuant to the exception to the hearsay rule set forth in the Uniform Business Records as Evidence Act, 42 Pa.C.S.A. § 6108 et seq. and should have been excluded. We reach this conclusion for the following reasons.

The Commonwealth failed to present either the persons who prepared the various conflicting corporate income tax returns

of the "Life of Leisure" or the custodian of these purported business records in order to attest to their authenticity as required by the Uniform Business Records as Evidence Act. The witness/accountant who was called by the Commonwealth to explain the meaning of the conflicting corporate income tax returns was neither the preparer of any of the corporate income tax returns nor an employee of "Life of Leisure." Additionally, the witness/accountant was not privy to the time, manner and sources of information that were utilized to prepare the various conflicting corporate income tax returns. Thus, because the evidentiary value of these income tax returns rested not only upon the credibility of the witness/accountant, but also upon the unknown persons who prepared these documents, the evidence was hearsay. Because the witness/accountant was unable to provide any information regarding the preparation and maintenance of these documents as part of the business records of "Life of Leisure," the Commonwealth failed to provide a sufficient basis to offset the hearsay character of this evidence and the trial court erred by not excluding it.

Next, we must determine whether appellant is entitled to receive a new trial for his theft by failure to make the required disposition of funds conviction based upon the trial court's incorrect decision to allow the admission of the conflicting sets of corporate income tax returns into evidence. The Commonwealth contends that the trial court's incorrect decision to permit the introduction of the corporate income tax returns into evidence constituted harmless error. The Commonwealth argues that its purpose for introducing the inadmissible corporate income tax returns into evidence was to support the theft by unlawful taking and theft by deception charges where it alleged that appellant embezzled funds from "Life of Leisure" for his own personal benefit. The Commonwealth argues that because appellant was acquitted by the jury of the charges to which the corporate income tax returns were pertinent, he was not prejudiced by this alleged erroneous admission of the evidence. We agree.

■■■■ The doctrine of "harmless error" is a technique of appellate review designed to advance judicial economy by obviating the necessity for retrial where the appellate court is convinced that the trial error was harmless beyond a reasonable doubt, and its purpose is premised upon the well-established proposition that the defendant is entitled to a fair trial but not a perfect one. *Commonwealth v. Thornton*, 494 Pa. 260, 431 A.2d 248 (1981). The burden of establishing that error was harmless beyond a reasonable doubt rests with the Commonwealth. *Commonwealth v. Rush*, 529 Pa. 498, 605 A.2d 792 (1992); *Commonwealth v. Williams*, 524 Pa. 404, 573 A.2d 536 (1990). Error is harmless if the Commonwealth has proven beyond a reasonable doubt that there is no reasonable probability that the error contributed to the verdict. *Commonwealth v. Santiago*, 405 Pa.Super. 56, 591 A.2d 1095, *appeal denied*, 529 Pa. 633, 600 A.2d 953 (1991). An error in the admission or exclusion of evidence requires a reversal unless the Commonwealth establishes that the error was harmless beyond a reasonable doubt. *Commonwealth v. Story*, 476 Pa. 391, 406, 383 A.2d 155, 162–63 (1978); *Commonwealth v. Moyer*, 407 Pa.Super. 336, 339, 595 A.2d 1177 (1991), *appeal denied*, 529 Pa. 656, 604 A.2d 248 (1992). However, where the evidence which was improperly admitted or excluded is relevant only to charges of which defendant was ultimately acquitted any error in admitting or excluding such evidence is harmless. *See Commonwealth v. Boyle*, 394 Pa.Super. 513, 532, 576 A.2d 967, 976 (1990), *appeal granted*, 526 Pa. 627, 584 A.2d 311, *vacated on other grounds*, 533 Pa. 360, 625 A.2d 616 (1993).

■■■■ Instantly, the Commonwealth has successfully met its burden of proving beyond a reasonable doubt that the erroneous admission of the corporate income tax returns did not contribute to the verdict against appellant. The corporate income tax returns were presented by the Commonwealth to prove that the discrepancies contained in these returns were part of appellant's overall scheme to embezzle funds from "Life of Leisure" for his own benefit. The jury, however, acquitted appellant of all charges which alleged that appellant

personally utilized corporate funds for his own benefit. The charges for which the jury chose to convict appellant, theft by failure to make the required disposition of funds and misapplication of entrusted property, were based upon entirely separate evidence. Appellant's theft by failure to make the required disposition of funds, was based upon his utilization of funds that were paid over to him to be forwarded to the Department of Transportation, to pay other corporate debts. His misapplication of entrusted property conviction, which we have reversed due to insufficient evidence, was based upon his alleged failure to pay over to the owner the proceeds from a vehicle that was sold on a consignment basis. As the improperly admitted corporate income tax returns had no relevance to either of these convictions, the Commonwealth has proven successfully, beyond a reasonable doubt, that there was no reasonable probability that the erroneous admission of the corporate income tax returns contributed to the verdict rendered by the jury. Therefore, appellant is not entitled to a new trial for his theft by failure to make the required disposition of funds conviction based upon the erroneous admission of the corporate income tax returns.

In his final issue on appeal, appellant claims, through new counsel, that his trial counsel was ineffective for failing to request that a character witness instruction be included in the trial court's charge to the jury. Appellant maintains that because he presented the testimony of two character witnesses, Sergeant Timothy Fennell of the Butler Police Department and his wife, Constance Wood, the trial court should have given the jury a character witness instruction. Appellant asserts that trial counsel had no rational basis for failing to request a character witness instruction and that appellant was prejudiced by trial counsel's failure to request such an instruction.

■ Our standard when reviewing a claim of ineffective assistance of counsel is whether appellant established that: (1) by act or omission counsel was arguably ineffective; (2) counsel's act or omission could not have had a reasonable basis designed to effectuate appellant's interests; and (3) appellant

was prejudiced by the act or omission and but for that act or omission, there was a reasonable probability that the result would have been different. *Commonwealth v. Gillespie*, 423 Pa.Super. 128, 132, 620 A.2d 1143, 1145 (1993); *Commonwealth v. Petras*, 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987).

It has long been the law in this Commonwealth that a defendant in a criminal trial may introduce evidence of his own good character in order to attempt to convince the trier of facts of his innocence. *Commonwealth v. Sampson*, 445 Pa. 558, 285 A.2d 480 (1971); *McCormick on Evidence*, § 191 (2d.Ed.1972). As stated by our Court in *Commonwealth v. Padden*, 160 Pa.Super. 269, 50 A.2d 722 (1947):

Evidence of good character is substanti[ve] and positive evidence, not a mere make [weight] to be considered in a doubtful case, and according to all our authorit[ies], is an independent factor which may of itself engender a reasonable doubt or produce a conclusion of innocence. To be sure, it is to and is not to be measured by, or appraised according to, the might or the [infirmity] in the Commonwealth's case. Even though, under all the [other] evidence a jury could reach a conclusion of guilt, still if the character evidence creates a reasonable doubt or establishes innocence a verdict of acquittal must be rendered.

160 Pa.Super. at 275, 50 A.2d at 725 (citations omitted; emphasis in original).

As is evidence[d] from the above, character evidence is extremely important evidence and is not to be taken lightly. Indeed, our courts have buttressed the importance of this evidence further by requiring that a jury be instructed [that] such evidence, in and of itself, may be sufficient to justify an acquittal. *Commonwealth v. Arenella*, 306 Pa.Super. 119, 452 A.2d 243 (1982); *see also Commonwealth v. Scott*, 496 Pa. 188, 436 A.2d 607 (1981); *Commonwealth v. Cleary*, 148 Pa. 26, 23 A. 1110 (1882); *Commonwealth v. Shapiro* 223 Pa.Super. 15, 297 A.2d 161 (1972).

*Commonwealth v. Schultz*, 335 Pa.Super. 306, 309–10, 484 A.2d 146, 147–48 (1984). *See also Commonwealth v. Neely,*

522 Pa. 236, 561 A.2d 1 (1989); *Commonwealth v. Gillespie, supra.*

■ Because appellant presented character evidence, he was entitled to receive the standard character witness instruction in the trial court's charge to the jury. Trial counsel, however, failed to request such an instruction or challenge its absence from the trial court's charge to the jury. As character evidence in and of itself may be sufficient to raise a reasonable doubt as to appellant's guilt, we can find no reasonable basis for trial counsel's failure to demand that the standard character witness instruction be given to the jury. Therefore, we hold that appellant was denied the effective assistance of counsel. Accordingly, we reverse the judgment of sentence imposed for appellant's conviction of theft by failure to make the required disposition of funds and grant appellant a new trial.

Based upon the foregoing, appellant's judgment of sentence for theft by failure to make the required disposition of funds is reversed and appellant is to be given a new trial on this particular charge. Appellant's judgment of sentence for misapplication of entrusted property is reversed because it was supported by insufficient evidence. Appellant's judgment of sentence for six of his failure to make application for certificate of title convictions, citation numbers: Y024030, Y02403, Y024035, Y024036, Y024037 and Y024038 is reversed due to insufficient evidence. Appellant's judgment of sentence for the remaining fourteen convictions for failure to make application for certificate of title is vacated and appellant is resentenced to pay a $50.00 fine for each conviction. Jurisdiction is relinquished.

CAVANAUGH, J., filed a concurring and dissenting opinion.

CAVANAUGH, Judge, concurring and dissenting opinion:

While I agree with much of the well-reasoned majority opinion, I write to express my views with respect to certain aspects of this troublesome matter.

I agree that the burdensome strictures of Pennsylvania appellate law require the grant of a new trial on the issue of the failure to give the mandated character witness charge. This is a trap for the unwary which every Pennsylvania trial court must be vigilant to avoid. Ordinarily, the grant of a new trial would avoid the consideration of other issues, but I further agree that here the issues must be addressed since the relief sought results in final disposition of certain charges.

I dissent from that portion of the majority opinion which "reverses" and presumably grants judgment *n.o.v.* on the charge of misapplication of entrusted property. As the majority properly finds, appellant so dominated and controlled Leisure as to be responsible for his actions despite the corporate shield. Further, the majority properly finds that appellant acted as a fiduciary in the Ramsey vehicle sale. However, I differ from the majority and would conclude that appellant acted criminally under 18 Pa.C.S.A. § 4113 when he deposited the entrusted funds into the Leisure account at a time when its financial status was so precarious that, within a week thereafter, he left to seek another opportunity. Wood clearly acted in a manner which was detrimental to and involved a substantial risk of loss to Paul Ramsey when he commingled the fiduciary funds with the corporate account of a badly weakened, if not impoverished, corporate entity. I would therefore affirm the verdict on this charge on the sufficiency issue.

Next, as to the legality of the summary convictions sentences, I would not strain to reach this issue since:

1) A new trial having been granted, we should extend the (perhaps fictitious) assumption that the "character witness" charge could change the result to the deliberations of the trial court acting as factfinder on the summary charges.

2) The Commonwealth has conceded error at least since the consideration of post-verdict motions.

In sum, I would grant a new trial as to all issues, but find the evidence fully sufficient to support the verdict as to the charge of misapplication of entrusted property.