J-S37017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: O.M.H. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: C.M.G., MOTHER | |
| | No. 37 MDA 2014 |

Appeal from the Decree Entered November 27, 2013
In the Court of Common Pleas of Berks County
Orphans' Court at No. 83290

BEFORE:  LAZARUS, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 25, 2014**

Appellant, C.M.G. a/k/a C.S. ("Mother"), appeals from the November 27, 2013 decree entered in the Court of Common Pleas of Berks County terminating Mother's parental rights to O.M.H. ("Child").  Upon review, we affirm.

On August 19, 2013, Berks County Children and Youth Services ("BCCYS") filed a petition for involuntary termination of Mother's parental rights to Child alleging, *inter alia*, that:

> The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.  23 Pa.C.S.A. § 2511(a)(1).
>
> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for [her] physical

or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. 23 Pa.C.S.A. § 2511(a)(2).

The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child. 23 Pa.C.S.A. § 2511(a)(5).

The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child. 23 Pa.C.S.A. 2511(a)(8).

BCCYS Petition for Involuntary Termination of Parental Rights, 8/19/13, at ¶¶ 7-10.[1]

Following a hearing conducted on October 30 and November 14, 2013 and submission of briefs by the parties, the trial court issued its decree on November 27, 2013, finding that the facts alleged in the termination petition were established by clear and convincing evidence; terminating Mother's

_____

[1] The petition also sought termination of the rights of Child's biological father ("Father" herein) as well as her putative father from whom Mother was separated. Both men consented to the termination of their parental rights to Child. N.T., 10/30/13, at 7-8.

rights to Child; and placing Child with BCCYS with authorization to give consent to or proceed with adoption of Child. Trial Court Decree, 11/27/13.

Mother filed a timely notice of appeal on December 27, 2013 along with her statement of matters complained of pursuant to Pa.R.A.P. 1925(a) in which she raised the same six issues she asks this Court to consider on appeal:

1. Whether the Court erred in terminating Mother's parental rights in that [BCCYS] failed to show any of the permissible grounds for termination of parental rights pursuant to 23 [Pa.C.S.A. § 2511] and [BCCYS] failed to prove their case by clear and convincing evidence as required by law.

2. Whether the Court erred in terminating Mother's parental rights where mother did not abuse or neglect this child, either of her other children, or any child; where no child of mother's was ever abused or neglected and where mother never allowed a child to be abused or neglected and there is no legal precedent for termination of parental rights under these circumstances.

3. Whether the Court erred in allowing [BCCYS's] exhibits to be entered into evidence, where the records were unauthenticated, not relevant to mother (and so marked) and were not properly offered as business records.

4. Whether the Court failed to properly consider the bond between mother and child as required by statute and caselaw where mother testified that there was a good bond and the only evidence of bonding by [BCCYS] was the unqualified opinion of a [BCCYS] caseworker who had only seen mother and child together on two occasions.

   Unqualified in this paragraph means that the caseworker's qualifications were not established for the record.

5. Whether the Court failed to properly consider mother's good faith and substantial compliance with all [BCCYS] requests and directives.

6. Whether the Court failed to consider the fact [that] both Dr. Rotenberg and mother's counselor showed little insight into Mother's past and wrongfully attributed her as having trouble with men, when there were no issues with the [f]athers of her two older children.

Mother's Brief at 4-5.

Our Supreme Court recently reiterated the applicable standard of review as follows:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal quotations and citations omitted). "[The agency] must prove the grounds for termination of parental rights under 23 Pa.C.S. § 2511 by clear and convincing evidence." *Id.* (citation omitted).

In its 1925(a) opinion, the trial court summarized the evidence presented at the termination hearing as follows:

Mother's involvement with BCCYS began in October 2011 when it was reported that Mother's paramour, who had recently moved into her home, physically assaulted the father of one of Mother's older daughters. The Agency received a second report in January 2012 that Mother had allowed her paramour, who had a

history of sexual offenses against children, to have unsupervised contact with her minor children. During the next five (5) months, Mother was involved with BCCYS and the Juvenile Division of this Court with regards to her older minor children. During this period, Mother reported that she would allow her unborn child, the subject minor child, to have contact with her paramour and that she wanted to be a family with him. Mother also minimized her paramour's anger issues and past inappropriate sexual contact with minors. Based on these concerns, BCCYS petitioned for and was granted emergency custody of the minor child upon her release from the hospital following her birth. The minor child was declared dependent on June 29, 2012, and Mother was ordered to cooperate with services.

The main condition which led to the minor child's placement was Mother's failure to recognize the risk that her paramour posed to her minor children and Mother's inability to protect the minor child from future harm. [Father], mother's paramour and the biological father of the subject minor child, has a *significant* history of inappropriate sexual contact with children. Unaware of this history, Mother allowed her minor children to have unsupervised contact with her paramour, including allowing him to bathe her older daughters. However, what concerns the Court the most are Mother's actions *after* she learned of her paramour's history of inappropriate sexual contact with children. Mother first became aware that BCCYS had serious concerns with her paramour and his contact with her children in January 2012, when she signed two (2) safety plans limiting and later eliminating [Father's] contact with her children. Mother learned in March 2012, when she received the dependency petitions relating to her older daughters, that [Father] had been charged with rape and indecent assault of pre-school aged children. Instead of taking immediate steps to remove [Father] from her life and, thereby, eradicate any potential risk to her minor children, Mother remained in contact with [Father] until January 2013. Even more concerning to this Court, Mother did not end contact with [Father] because she realized the risk that he posed to her children; instead, Mother ended contact only after [Father] physically assaulted her. Mother also continued to minimize [Father's] history of inappropriate sexual contact with minors.

The Court believes that the main condition which led to the minor child's placement continues to exist. The testimony of Dr. Rotenberg and Ms. Karaisz was extremely helpful to this Court's conclusion that Mother remains unable to protect the minor child from harm. Dr. Rotenberg, an expert in the field of psychiatry, evaluated Mother in June 2013. Based on that evaluation, Dr. Rotenberg concluded that Mother was unable to place the needs of her children above her own, that Mother rationalized the inequities of her paramour and that no therapy or medication would change these conditions. In addition, when Dr. Rotenberg discussed [Father] with Mother, Dr. Rotenberg concluded that Mother continued to view him as "an unfortunate individual who was picked on by society . . . and that he should be forgiven. . ." Furthermore, Dr. Rotenberg concluded that Mother remained attached to [Father]. Ms. Karaisz, an expert in the field of non-offending parent treatment, began treatment with Mother in June 2012. Despite Mother's completion of the curriculum-based non-offending parent treatment, Ms. Karaisz believed that Mother failed to internalize or benefit from any of the treatment. After treating Mother for over a year in which she saw Mother for forty-six (46) sessions, Ms. Karaisz continued to believe that Mother has minimal insight into the problems which initially brought her to treatment and would require close monitoring to protect herself and her children from harm. The testimony of these experts as well as the Court's review of the entire file led the Court to conclude that the condition which led to the minor child's placement continues to exist and that there are no other services which could reasonably help Mother remedy this condition.

Trial Court Opinion ("T.C.O."), 1/24/14 at 5-8 (footnotes and references to notes of testimony and exhibits omitted; emphasis in original).[2]

---

[2] We note Mother was born on April 21, 1987. On July 24, 2007, Mother gave birth to A.M., fathered by C.M. with whom Mother had a three-year relationship. Notes of Testimony ("N.T."), 11/14/13, at 178-81. On February 8, 2010, Mother gave birth to H.S., fathered by J.S. whom Mother married in May 2010. *Id.* at 182. Their nearly three-year long relationship ended in approximately August of 2011. *Id.* Shortly thereafter, Mother
*(Footnote Continued Next Page)*

As explained above, this Court is to accept the trial court's findings of fact and determinations of credibility if they are supported by the record. ***In re T.S.M.***, 71 A.3d at 267. We have reviewed the record and conclude the factual findings and credibility determinations are supported by the record and are accurately and aptly summarized in the excerpt of the trial court opinion set forth above. Therefore, it becomes incumbent upon this Court to determine if the trial court committed error of law or abused its discretion by terminating Mother's parental rights. ***Id.*** With those standards in mind, we consider the issues raised by Mother.

Both Mother and the trial court addressed Mother's first, second and fifth issues together and we shall do likewise. In her first issue, Mother contends the trial court erred in terminating her parental rights because BCCYS failed to prove any grounds for termination under 23 Pa.C.S.A. § 2511.[3] In her second issue, she alleges trial court error for terminating

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

became involved with Father, ***id.*** at 186, who was born on February 22, 1986 and is the father of Child involved in these proceedings.

Neither A.M. nor H.S. is the subject of the instant proceedings. A.M. is presently in the custody of her paternal grandmother while H.S. is in her father's custody. Neither is subject to Juvenile Court supervision. Trial Court Opinion, 1/24/14 at 5-6 n. 2, 3. Father consented to the adoption of Child on September 25, 2013. The trial court entered a decree confirming that consent on October 30, 2013. N.T., 10/30/13, at 7-8.

[3] Mother notes that the trial court restricted its bases for termination to § 2511(a)(5) and (8), even though BCCYS also raised (a)(1) and (2) as supporting termination. Mother's Brief at 13; T.C.O. at 5.

Mother's parental rights in absence of abuse or neglect on Mother's part.  In her fifth issue, Mother argues that the trial court failed to consider her good faith and substantial compliance with all BCCYS requests and directives. Mother's Brief at 4-5.

"The test for terminating parental rights consists of two parts." ***In re N.A.M.***, 33 A.2d 95, 99 (Pa. Super. 2011).  This Court has explained the bifurcated process as follows:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***Id.*** at 99-100 (quoting ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007)).

We first review the trial court's determination that Mother's conduct satisfies the statutory grounds for termination under either § 2511(a)(5) or (8).[4]  Under § 2511(a)(5), parental rights may be terminated if the child has

---

[4] "We must agree with the trial court's decision as to only one subsection of 23 Pa.C.S. § 2511(a) in order to affirm the termination of parental rights." ***Id.*** at 100, citing ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

been removed from the parent's care for a period of at least six months, the conditions leading to removal continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions that led to the removal, and termination would best serve the needs and welfare of the child. Under the provisions of (a)(8), parental rights may be terminated if the child has been removed from the care of the parent, 12 months or more have elapsed from the date of removal, conditions that led to the removal continue to exist, and termination of parental rights would best serve the needs and welfare of the child.

Subsections (a)(5) and (8) each require that a period of time elapse between removal of a child from a parent's care and the termination of parental rights, *i.e.*, six months under (a)(5) and twelve months under (a)(8). Child was adjudicated dependent and removed from Mother's care directly from the hospital on June 29, 2012. N.T., 10/30/13, at 58-60. BCCYS filed its petition to terminate Mother's parental rights on August 19, 2013. Petition for Involuntary Termination of Parental Rights, 8/19/13. Nearly 14 months elapsed from the time of removal until the time BCCYS filed its petition, satisfying the time requirements under both (a)(5) and (8).

Subsections (a)(5) and (8) each also require that the conditions leading to the removal of a child continue to exist and subsection (5) also considers whether the parent cannot or will not remedy the condition. The

trial court determined the main condition leading to the removal of Child was Mother's inability to protect her child from harm. T.C.O. at 6-7. Based on the expert testimony of Dr. Larry Rotenberg and BCCYS counselor Julie Karaisz, as well as the trial court's review of the entire file, the trial court concluded that "the condition which led to the minor child's placement continues to exist and that there are no other services which could reasonably help Mother remedy this condition." *Id.* at 8 (citing *In the Interest of Lilley*, 719 A.2d 327, 332 (Pa. Super. 1998) (termination petition may be granted if parent appears incapable of benefitting from the reasonable efforts supplied over a realistic period of time)).

Addressing the trial court's expressed concerns about Mother's inability to protect Child from harm, Mother claims she is "not sure what this assertion actually means. Mother's children were never harmed. Had a child or children been harmed while in Mother's care, this assertion would actually make sense." Mother's Brief at 16. Mother suggests, "This actually appears to relate to the speculative claim that Mother would allow Father to abuse the children as Father is a sex offender." *Id.*

Mother's counsel asserts his thorough research has failed to uncover any case in which the Commonwealth has sought termination of a non-offending parent's rights where the children were not actually abused. *Id.* at 22. Counsel misconstrues the trial court's concern and basis for its ruling. The trial court did not find that Mother abused Child or her other children.

Rather the trial court concluded that Mother failed to appreciate the risk of harm and was unable to protect Child from future harm. T.C.O. at 6. As this Court has held, "grounds for termination under (a)(2) are not limited to affirmative misconduct; those grounds may include acts of incapacity to perform parental duties." *In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008), (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002)).[5]

The trial court's determination that Mother could not protect Child from future harm was based not only on Mother's failure to perceive the risk of harm but also on the expert testimony of Dr. Rotenberg who "concluded that Mother was unable to place the needs of her children above her own, that Mother rationalized the inequities of her paramour and that no therapy or medication would change these conditions." T.C.O. at 7-8 (citing N.T., 10/30/13, at 14). Further, Ms. Karaisz acknowledged that Mother completed the non-offending parent treatment and pursued domestic violence and mental health programs. Despite Mother's pursuits of programs, Ms. Karaisz concluded that Mother failed to internalize or benefit from the treatment. *Id.* at 8 (citing N.T., 11/14/13, at 140-41). Based on her 46 sessions with

---

[5] We recognize that the trial court based its termination on (a)(5) and (8) and did not specifically address (a)(2), which does consider whether a child has been without essential parental care due to the "repeated and incapacity, abuse, neglect of refusal of the parent." 23 Pa.C.S.A. § 2511 (a)(2). However, because Mother questions the trial court's ruling in absence of proof of abuse by Mother, we believe a reference to (a)(2) is warranted under the circumstances.

Mother, Ms. Karaisz believed that Mother "had minimal insight into the problems which initially brought her to treatment." *Id.* (citing N.T., 11/14/13, at 144-45).

The record supports the trial court's determination that the conditions leading to Child's removal continue to exist and Mother cannot or will not remedy that condition as required in (a)(5) and (8).[6]

After concluding that Mother's conduct warranted termination under both § 2511(a)(5) and (8), the trial court appropriately considered the best interests of the child, giving primary consideration to the developmental, physical and emotional needs and welfare of the child pursuant to § 2511(b). *See In re N.A.M.*, 33 A.3d at 100. The trial court concluded:

> [T]his Court has no doubt that the termination of Mother's rights will serve the best interests of [Child]. As discussed above, the Court does not think that Mother is able to *safely* provide for the child's needs. Fortunately, the child is currently living in a foster home which meets those needs.

_____

[6] Subsections (a)(5) and (8) also require that termination of rights will serve the needs and welfare of a child. In its analysis of § 2511(a), the trial court did not specifically address the needs and welfare of Child in the context of § 2511(a). However, it did conduct an analysis of the best interests of Child in its discussion of § 2511(b) and considered the effect of severing the bond between Mother and Child. This Court has held that the "needs and welfare" element of § 2511(a) "requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *In re T.S.M.*, 71 A.3d at 267 (internal quotation omitted). The trial court's best interests analysis included an assessment of the effect of permanently severing the parental bond and supports a finding that termination would serve Child's needs and welfare under (a)(5) and (8).

T.C.O. at 10 (emphasis in original). The court also considered the testimony of Child's adoption caseworker, Cheri Kipp, who described Child's bond with her foster parents as "strong" and testified that Child "looks to them to provide her physical and emotional needs." *Id.* at 11 (quoting N.T., 10/30/13, at 76-77). She also stated that the foster parents present as a long-term resource for Child. *Id.* Ms. Kipp also described Child's interaction with Mother as "positive, and there is positive interaction as far as play. And during the end of the visits when [Child] did go back to her foster mother, she did not exhibit any emotional distress in leaving [Mother]." *Id.*

The trial court considered Child's bond with Mother and accurately explained:

> [T]he correct analysis under [§ 2511(b)] is what effect permanently severing this bond would have on the child. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). The minor child has been in BCCYS' custody since her birth, she is positively bonded to her foster family and the Court does not believe that terminating Mother's parental rights and severing what little bond remains will have any permanent effect on the minor child.

*Id.*

The trial court's findings of fact and credibility determinations are supported by clear and convincing evidence found in the record and we find no error of law or abuse of discretion in its ruling. There is no basis for disturbing that ruling based on Mother's first, second and fifth issues.

In the course of finding Mother's first, second and fifth issues meritless, the trial court addressed Mother's sixth issue in a footnote. The trial court commented:

> The Court will briefly address Mother's alleged error six (6) in which Mother contends that the Court failed to consider that Dr. Rotenberg and Ms. Karaisz showed little insight into her past and wrongfully attributed her as having trouble with men. The Court did, in fact, consider the entirety of Dr. Rotenberg and Ms. Karaicz's testimony, including Mother's cross-examination of the extent of their expert opinions. As the Court understood and accepted their testimony as relevant to the issue of termination, both experts testified that Mother's history of failed relationships demonstrated her instability and dependence on the men in her life. The Court considered this information as relevant to its conclusion that Mother is unable to protect the minor child from harm. While the experts may not have been aware of the details of Mother's prior relationships, the Court did not consider this damaging to their overall expert conclusions. Therefore, the Court believes that Mother's alleged error six (6) is meritless.

T.C.O. at 8-9 n.4 (references to notes of testimony omitted).

The trial court's findings are supported by the record. As the trial court acknowledges, the expert witnesses did not know certain details of the relationships between Mother and the fathers of her two older daughters. However, Dr. Rotenberg not only examined Mother but also had background documents and the results of Mother's psychological tests upon which to base his diagnoses and conclusions regarding Mother's personality disorder with features of dependency and narcissism. N.T., 10/30/13, at 24-26 and 33-34. Ms. Karaisz had the benefit of 46 sessions with Mother and appreciated that Mother completed non-offending parent treatment and pursued domestic violence and mental health programs, yet failed to

internalize or benefit from the treatment. N.T., 11/14/13, at 116-21. Our review leads us to conclude that the trial court properly rejected Mother's sixth issue for lack of merit.

In her third issue, Mother alleges trial court error for admitting BCCYS exhibits, contending the exhibits were not authenticated, not relevant, and not properly offered as business records. "Our standard of review relative to the admission of evidence is for an abuse of discretion." ***Commonwealth v. Wantz***, 84 A.3d 324, 336 (Pa. Super. 2014).

During the October 30, 2013 hearing, BCCYS offered a packet of exhibits into evidence through the adoption caseworker. N.T., 10/30/13, at 48. Mother's counsel objected, arguing that a number of the exhibits were marked as relevant to Father, rather than to Mother, and were therefore irrelevant for the proceedings. Counsel also objected on the grounds the records were hearsay. ***Id.*** at 48-54.

In its opinion, the trial court quoted this Court's decision in ***Commonwealth v. Wood***, 637 A.2d 1335 (Pa. Super. 1994), stating:

> The question of whether documents should be admitted under the "business records" exception to the hearsay rule is [within the trial court's discretion]. . . . It is not essential . . . to produce either the person who made the entries or the custodian of the records at the time the entries were made. Moreover, the law does not require that a witness qualifying business records even have personal knowledge of the facts reported . . . [as] long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness[.]

T.C.O. at 9, quoting **Wood**, 637 A.2d at 1350. The trial court determined that the witness was able to identify the exhibits and, further, "the entirety of the record provides sufficient information that BCCYS' records are prepared simultaneously with the information being obtained and maintained as business records." **Id.** at 10 (references to notes of testimony omitted). Addressing Father's relevancy challenge, the trial court also found that exhibits relevant to Father were relevant to Mother's termination proceedings because they demonstrate "the severity of his history of inappropriate sexual contact with children and Mother's poor judgment in allowing [Father] to have unsupervised contact with her minor children and in failing to remove him from her life. These documents were only relevant for that purpose[.]" **Id.** We find no abuse of discretion in the trial court's admission of the documents and reject Father's third issue as meritless.

In the final issue raised by Mother, listed in her brief as her fourth issue, Mother asserts that the trial court failed to give proper consideration to the bond between Mother and Child, noting that Mother testified there was a good bond while the only evidence of bonding presented by BCCYS was based on "the unqualified opinion of a [BCCYS] caseworker who had only seen mother and child on two occasions." Mother's Brief at 5 (noting that "unqualified," as used in this claim, "means that the caseworker's qualifications were not established for the record"). Although we considered the issue of Mother's bond with Child in the course of addressing Mother's

- 16 -

second issue, we do so again in the context of the challenge to the "unqualified" opinion of the adoption caseworker.

When considering the bond between a parent and child, this Court has recognized:

> We observe that an orphans' court is not required by statute or precedent to order a formal bonding evaluation by an expert. *In re* [*K.K.R.-S.*], 958 A.2d 529, 533 (Pa. Super. 2008). Indeed, in assessing the parental bond, the orphans' court is permitted to rely upon the observations and evaluations of social workers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). Moreover, the mere existence of an emotional bond does not preclude the termination of parental rights. As we explained in *In re A.S.*, [11 A.3d 473, 483 (Pa. Super. 2010)]:
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012).

The trial court acknowledged Mother's testimony concerning her bond with Child but also properly considered the testimony of the caseworker and concluded that severing the bond with Mother would not have any permanent effect on Child. T.C.O. at 11. Our review of the record supports that finding. The caseworker testified that Child "exhibited a strong bond to her foster parents." N.T., 10/30/13, at 77. Although Mother and Child had a "positive interaction as far as play," . . . "Child did not exhibit any emotional distress in leaving [Mother]." *Id.* The caseworker concluded that

- 17 -

"there would be no harm or detriment to terminate the bond. However, not terminating parental rights would pose a significant risk because [Mother] has not demonstrated that she is able to protect herself, let alone [Child]." *Id.* at 77-78. Contrary to Mother's contention, it is clear the trial court properly considered the bond between Mother and Child. Mother's fourth issue lacks merit.

None of Mother's issues provides any basis for relief. The trial court's findings of fact and credibility determinations are supported by the record and, therefore, we accept them. We find no error of law or abuse of discretion in its determination that BCCYS proved grounds for termination of Mother's parental rights under § 2511(a)(5), (a)(8) and (b) and did so by clear and convincing evidence. Therefore, we affirm the trial court's November 27, 2013 decree terminating Mother's parental rights to Child.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/25/2014