J-S08006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EINSTEIN LIMA | |
| Appellant | No. 536 MDA 2020 |

Appeal from the Judgment of Sentence Entered November 14, 2019
In the Court of Common Pleas of Luzerne County
Criminal Division at No.: CP-40-CR-0000805-2019

BEFORE:  STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED MAY 20, 2021**

Appellant Einstein Lima appeals from the November 14, 2019 judgment of sentence entered in the Court of Common Pleas of Luzerne County ("trial court"), following his jury convictions for criminal attempt to commit false imprisonment, and simple assault and a bench conviction for summary harassment.[1]  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  As recounted by the trial court:

> The charges here arose from events that occurred on the afternoon of November 19, 2018.  The victim, thirteen-year-old L.Q., was walking on Charles Street in Wilkes-Barre on her way home from school.  She testified that, as she was walking, a man in a black SUV with New York license plates drove by and asked her for her name.  When the driver stopped to speak to her, she

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a), 2701(a)(3), and 2709(a)(1), respectively.

was about one car's length away from him. She didn't respond and kept walking. She said he then drove around the block, came back on Charles Street, and parked across the street. She turned around, saw it was "the exact same car" and continued walking. She testified that, as she continued walking, he then acted as if he were going into the house across the street but instead came around behind her and grabbed her under her arms. She said that there was no one else on the street and that she was scared that she would not have the strength to fight back. She said that she thought that something bad was going to end up happening to her and that she thought that she might get killed.

After he grabbed her, she said she elbowed him, he let go of her, and she ran directly to her home less than a block away. She described her assailant as a black male with dreads, wearing all dark clothes. She said that he smelled like marijuana and that she also had smelled marijuana coming from the inside of his car during the first contact. In addition, she saw a red hat on the dashboard of the SUV. After arriving at home, she told her stepmother what happened and her father called 911.

Officer James Sheridan of the Wilkes-Barre City Police Department was assigned to a patrol zone in south Wilkes-Barre on the day in question. He was dispatched to Charles Street, a one-way street running south with parking on both sides of the street, in order to meet with L.Q. at her home. Upon arriving at the victim's home, Officer Sheridan testified that the victim was "shaking," "very nervous, very scared, [and] very upset." When Officer Sheridan asked her what happened, she described the incident to him. She said she was walking home from school when a large black SUV with New York license plates passed her and the male driver asked her name. The victim kept walking. The SUV circled around the block and passed her again, this time pulling over. The same driver exited the car and it appeared as if he was going to go into another house. Officer Sheridan testified that the victim told him that the man came up behind her instead and grabbed her under the arms in a "bear hug" type grab. He testified that she said she elbowed the man, causing him to fall, and ran home. Officer Sheridan said that she described the man as a black male with long dreadlocks wearing dark clothes and that he smelled like marijuana. The officer also said that the victim told him she was able to smell the marijuana both on the man's person and coming from the compartment of the vehicle. Officer Sheridan testified that the victim said she could see a red beanie cap on the SUV's

- 2 -

dashboard. During Officer Sheridan's testimony, it was established that the victim weighed 145 pounds and [Appellant] weighed approximately 175 pounds.

After speaking with the victim, Officer Sheridan searched the area. As he proceeded south on Charles Street, he saw a black Chevy SUV with a New York license plate and the engine running near the intersection of Charles and Academy streets. Officer Sheridan activated his lights and when a passenger exited the SUV, he identified himself as police and told him to get back in the car. [Appellant], who was the driver of the car, stepped out of the vehicle and was immediately recognizable to Officer Sheridan as fitting the description the victim had given minutes earlier. The officer described [Appellant] as a black male with long dreadlocks, wearing blue jeans, a light sweater, and a red beanie cap. The officer also said that he could smell marijuana both coming from the driver's compartment as well as from [Appellant] himself. The officer testified that he had encountered marijuana several times through the routine course of his employment as a police officer.

After detaining [Appellant], Officer Sheridan drove his patrol car back to the victim's home and returned with her to the scene, asking her to let him know if she saw a vehicle or anything recognizable. The victim immediately identified [Appellant's] vehicle. Officer Sheridan testified that [Appellant] was in the middle of the road and the victim identified him as her assailant. She testified that, at the time of her identification, [Appellant] was wearing a different shirt than he had been wearing at the time of the incident. Officer Sheridan testified that there were no police cars or police officers around [Appellant's] vehicle while the victim identified it. The victim testified that there were police cars and/or police officers near the vehicle.

The officer said that he asked if she was sure that she was identifying her assailant and the victim replied, "absolutely." The victim testified that no one tried to influence her identification of either the vehicle or [Appellant]. Officer Sheridan then returned the victim to her home and asked her to provide a written statement. In her statement, the victim indicated that at the time he grabbed her, the assailant was wearing a black beanie hat and had a gold chain and all black clothes on. She also wrote that when she elbowed her assailant after he grabbed her, he fell.

Officer Sheridan also testified that he searched the SUV and found two golf ball sized bags of what he believed to be marijuana in

- 3 -

plastic bags in the center console. He found a navy blue winter-type coat that appeared to be black on the passenger seat. Officer Sheridan specifically testified that the navy jacket found on the passenger seat was dark enough that a person could have construed it as being black. [Appellant] was arrested after the identification and search of the vehicle.

[Appellant] testified on his own behalf. He indicated that he had seen the victim walking on Charles Street on the afternoon in question when he was on the way to visit his cousin. As he was driving and on his phone, [Appellant] said he saw L.Q. walking in the street. He testified that he said to her, "Are you crazy, are you looking for a case?" He explained that in New York City, many times people will walk on the street and tell a driver "if you hit me with your car I will sue." He denied that he ever got out of his car or even stopped it at any point when he was near her. The defense also presented testimony from Michael Magnotta, a private investigator who questioned the investigatory practices of the police in this case but did not speak with the victim or any of the police officers involved in the case.

Trial Court Opinion, 8/3/20, at 2-6 (record citations and footnote omitted).

On September 18, 2019, a jury convicted Appellant of criminal attempt to commit false imprisonment, and simple assault. Immediately thereafter, the trial court found Appellant guilty of harassment. On November 14, 2019, the trial court sentenced Appellant to an aggregate term of 24 to 60 months' imprisonment and directed him to register as sex offender under the Sexual Offenders Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10—9799.42. On November 25, 2019, Appellant filed post-sentence motions, which the trial court denied on February 14, 2020. Appellant timely appealed. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents a single issue for our review.

    I.     Whether the Commonwealth presented sufficient evidence, as a matter of law, to support a verdict of guilt in relation to one (1) count of criminal attempt to commit false imprisonment and one (1) count of simple assault by menace, with respect to victim L.Q.?

Appellant's Brief at 6 (unnecessarily capitalizations omitted).

At the outset, we agree with the trial court's observation and Commonwealth's claim that Appellant abandoned his sufficiency claims relating to his criminal attempt and simple assault convictions, because he failed to preserve them in his Rule 1925(b) statement. Appellant's Rule 1925(b) statement provides in pertinent part:

4. The trial court erred in not granting a new trial based upon insufficiency of evidence. The verdict rendered in this matter is so contrary to the evidence presented that it shocks the sense of justice and requires the granting of a new trial imperative so that justice may be given another opportunity to prevail.

5. Moreover, the underlying convictions in this matter are against the weight of the evidence in that there was insufficient evidence to prove the Commonwealth's allegations and theory of the case. There was no sufficient evidence presented to enable the fact-finder to find every element of each crime beyond a reasonable doubt.

6. Furthermore, the evidence that was presented was so weak and inconclusive in regard to several elements to the crimes that as a matter of law no probability of fact may be drawn from the circumstances.

Rule 1925(b) Statement, 5/19/20, at ¶¶ 4-6. Based on the foregoing, the trial court and the Commonwealth point out that Appellant appears "to conflate the standards regarding challenges to the weight of evidence and sufficiency of evidence, his [Rule 1925(b)] statement did not specifically state

how, or upon which element(s), the Commonwealth's evidence was insufficient." Commonwealth's Brief at 3. This Court has held:

> If Appellant wants to preserve a claim that the evidence was insufficient, then [his Pa.R.A.P.] 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a Pa.R.A.P.] 1925(b) statement does not specify the allegedly unproven elements[,] . . . the sufficiency issue is waived [on appeal].

***Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa. Super. 2008) (citation omitted). Moreover, Rule 1925(b)(4) provides in relevant part that "The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge[,]" and "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(ii), (vii). Here, Appellant's Rule 1925(b) statement failed to identify the elements of criminal attempt, false imprisonment, and simple assault upon which he alleges the evidence was insufficient. Accordingly, his sufficiency challenges with respect to criminal attempt to commit false imprisonment and simple assault are waived.

Nonetheless, even if we were to consider Appellant's sufficiency claims,[2] we still would conclude that he is not entitled to relief. Here, the trial court

_____

[2] A claim challenging the sufficiency of the evidence is a question of law." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

- 6 -

accurately and thoroughly addressed the merits of Appellant's sufficiency challenge regarding his convictions for criminal attempt and simple assault. *See* Trial Court Opinion, 8/3/20, at 8-14. The trial court concluded that, viewed in a light most favorable to the Commonwealth, the evidence establishes that the Commonwealth proved beyond a reasonable doubt that Appellant was guilty of criminal attempt and simple assault. *Id.* Accordingly, we affirm Appellant's November 14, 2019 judgment of sentence. We further direct that a copy of the trial court's August 3, 2020 opinion be attached to any future filings in this case.

---

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014).

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/20/2021

COMMONWEALTH OF PENNSYLVANIA     :    IN THE COURT OF COMMON PLEAS
                                               :        OF LUZERNE COUNTY

                                               :      CRIMINAL DIVISION

                    vs.                               :

EINSTEIN LIMA                          :       805    OF    2019

## Pa.R.A.P. 1925(a) OPINION

Einstein Lima ("Defendant") appeals from the February 14, 2020, denial of post-sentence motions. After a two-day jury trial commencing on September 17, 2019, Defendant was convicted of Count 1, criminal attempt to commit false imprisonment[1] and Count 2, simple assault.[2] In addition, the court found Defendant guilty of Count 6, summary harassment[3] [4].

On November 14, 2019, the court sentenced Defendant to a state correctional institution for a minimum of 15 months to a maximum of 36 months on Count 1, and a minimum of 9 months to a maximum of 24 months on Count 2 consecutive to Count 1. Count 6 merged with Count 2 for sentencing purposes. Defendant's sentence is within the standard range of the sentencing guidelines. He received credit for time served in the amount of 67 days.[5] Defendant was ordered to register as a Tier I offender. In addition, pursuant to the dictates of Pennsylvania's Sex Offender Registration and Notification Act (SORNA),[6] Defendant received and signed the written SORNA

---

[1] 18 Pa.C.S.A. § 901 (a)
[2] 18 Pa.C.S.A. § 2701(a)(3)
[3] 18 Pa.C.S.A. § 2709 (a)(1)
[4] Count 3 (disorderly conduct) Count 4 (small amount of marijuana) and Count 5 (use or possession of drug paraphernalia) were dismissed after the court granted Defendant's motion for judgment of acquittal.
[5] Additional terms of sentence follow: Defendant was ordered to have no contact with the victim or the victim's family or witnesses. He was also ordered to pay costs and ordered to undergo mental health and drug/alcohol evaluations and to follow any treatment recommendations. He was further ordered to comply with programming recommended by the Department of Corrections. Defendant was also ordered to provide a DNA sample and to allow the capture of his palm prints.
[6] 42 Pa.C.S.A. §§ 9799.10-9799.42.

1

notification at the sentencing hearing. The specific requirements were read into the record. Defendant was informed of his appeal rights and was thereafter remanded.

Defendant filed post-sentence motions on November 25, 2019, which were denied on February 14, 2020. Defendant filed a Notice of Appeal on March 16, 2020. After being ordered to do so on April 28, 2020, Defendant filed a Statement of Errors Complained of on Appeal (Statement) on May 19, 2020.

## I. Statement of Facts

The charges here arose from events that occurred on the afternoon of November 19, 2018. The victim, thirteen-year-old L.Q., was walking on Charles Street in Wilkes-Barre on her way home from school. N.T. Jury Trial, 9/17/2019, at p. 42-43. She testified that, as she was walking, a man in a black SUV with New York license plates drove by and asked her for her name. Id. at p. 43-44. When the driver stopped to speak to her, she was about one car's length away from him. Id. at p. 45, l. 17-21. She didn't respond and kept walking. Id. at p. 43, l. 15-19. She said he then drove around the block, came back on Charles Street, and parked across the street. Id. at p. 43-44. She turned around, saw it was "the exact same car" and continued walking. Id. at p. 44, l. 1-2. She testified that, as she continued walking, he then acted as if he were going into the house across the street but instead came around behind her and grabbed her under her arms. Id. at p. 43-44. She said that there was no one else on the street and that she was scared that she would not have the strength to fight back. Id. at p. 47, l. 3-19. She said that she thought that something bad was going to end up happening to her and that she thought that she might get killed. Id. at p. 47, l. 20-24.

After he grabbed her, she said she elbowed him, he let go of her, and she ran directly to her home less than a block away. Id. at p. 29; p. 46. She described her assailant as a black male with dreads, wearing all dark clothes. Id. at p. 44 l. 17-24. She said that he smelled like marijuana and

2

that she also had smelled marijuana coming from the inside of his car during the first contact. Id. at p. 46, l. 16-21. In addition, she saw a red hat on the dashboard of the SUV. Id. at p. 44, l. 19. After arriving at home, she told her stepmother what happened and her father called 911. Id. at p. 47-48.

Officer James Sheridan of the Wilkes-Barre City Police Department was assigned to a patrol zone in south Wilkes-Barre on the day in question. Id. at p. 18-19. He was dispatched to Charles Street, a one-way street running south with parking on both sides of the street, in order to meet with L.Q. at her home. Id. at p. 19, l. 17-23. Upon arriving at the victim's home, Officer Sheridan testified that the victim was "shaking," "very nervous, very scared, [and] very upset." Id. at p. 20, l. 5. When Officer Sheridan asked her what happened, she described the incident to him. She said she was walking home from school when a large black SUV with New York license plates passed her and the male driver asked her name. Id. at p. 20, l. 9-20. The victim kept walking. Id. at p. 20, l. 11. The SUV circled around the block and passed her again, this time pulling over. Id. at p. 20, l. 11-13. The same driver exited the car and it appeared as if he was going to go into another house. Id. at p. 20, l. 14-15. Officer Sheridan testified that the victim told him that the man came up behind her instead and grabbed her under the arms in a "bear hug" type grab. Id. at p. 20; 31. He testified that she said she elbowed the man, causing him to fall, and ran home. Id. at. p. 20, l. 16-17. Officer Sheridan said that she described the man as a black male with long dreadlocks wearing dark clothes and that he smelled like marijuana. Id. at p. 20-21. The officer also said that the victim told him she was able to smell the marijuana both on the man's person and coming from the compartment of the vehicle. Id. at p. 21, l. 2-8. Officer Sheridan testified that the victim said she could see a red beanie cap on the SUV's dashboard. Id. at p. 21, l. 11-12.

3

During Officer Sheridan's testimony, it was established that the victim weighed 145 pounds and the Defendant weighed approximately 175 pounds. Id. at p. 31-32.

After speaking with the victim, Officer Sheridan searched the area. Id. at p. 21, l. 14-15. As he proceeded south on Charles Street, he saw a black Chevy SUV with a New York license plate and the engine running near the intersection of Charles and Academy streets. Id. at p. 21-22. Officer Sheridan activated his lights and when a passenger exited the SUV, he identified himself as police and told him to get back in the car. Id. at p. 22, l. 16-22. Defendant, who was the driver of the car, stepped out of the vehicle and was immediately recognizable to Officer Sheridan as fitting the description the victim had given minutes earlier. Id. at p. 23, l. 3-6. The officer described Defendant as a black male with long dreadlocks, wearing blue jeans, a light sweater, and a red beanie cap. Id. at p. 23, l. 6-9. The officer also said that he could smell marijuana both coming from the driver's compartment as well as from Defendant himself. Id. at p. 24, l. 3-18. The officer testified that he had encountered marijuana several times through the routine course of his employment as a police officer. Id. at p. 24, l. 19-22.

After detaining Defendant, Officer Sheridan drove his patrol car back to the victim's home and returned with her to the scene, asking her to let him know if she saw a vehicle or anything recognizable. Id. at p. 25, l. 5-14. The victim immediately identified Defendant's vehicle. Id. at p. 25, l. 14-16. Officer Sheridan testified that Defendant was in the middle of the road and the victim identified him as her assailant. Id. at p. 26, l. 5-7. She testified that, at the time of her identification, Defendant was wearing a different shirt than he had been wearing at the time of the incident. Id. at p. 52, l. 6-8. Officer Sheridan testified that there were no police cars or police officers around Defendant's vehicle while the victim identified it. Id. at p. 25, l. 19-21. The victim testified that there were police cars and/or police officers near the vehicle. Id. at p. 50, l. 9-13.

4

The officer said that he asked if she was sure that she was identifying her assailant and the victim replied, "absolutely." Id. at p. 26, l. 7-8. The victim testified that no one tried to influence her identification of either the vehicle or Defendant. Id. at p. 50, l. 5-21. Officer Sheridan then returned the victim to her home and asked her to provide a written statement. Id. at p. 25, l. 10-14. In her statement, the victim indicated that at the time he grabbed her, the assailant was wearing a black beanie hat and had a gold chain and all black clothes on. Id. at p. 51, l. 19-21. She also wrote that when she elbowed her assailant after he grabbed her, he fell. Id. at p. 51, l. 18.

Officer Sheridan also testified that he searched the SUV and found two golf ball sized bags of what he believed to be marijuana in plastic bags in the center console. Id. at p. 26, l.15-25. He found a navy blue winter-type coat that appeared to be black on the passenger seat. Id. at p. 26, l. 19-22.[7] Officer Sheridan specifically testified that the navy jacket found on the passenger seat was dark enough that a person could have construed it as being black[8]. Id. at p. 38-39. Defendant was arrested after the identification and search of the vehicle. Id. at p. 27, l. 21-23.

Defendant testified on his own behalf. He indicated that he had seen the victim walking on Charles Street on the afternoon in question when he was on the way to visit his cousin. Id. at p. 65, l. 17-25. As he was driving and on his phone, Defendant said he saw L.Q. walking in the street. He testified that he said to her, "Are you crazy, are you looking for a case?" Id. at p. 66, l. 1-8. He explained that in New York City, many times people will walk on the street and tell a driver "if you hit me with your car I will sue." Id. at p. 66, l. 11-16. He denied that he ever got out of his car or even stopped it at any point when he was near her. Id. at p. 66-67. The defense also presented testimony from Michael Magnotta, a private investigator who questioned the

---

[7] Pictures of the coat and bags were admitted as Commonwealth Exhibits Number 5 and 6. Id. at p. 27, l. 5-19. These photographs were published to the jury. Id.

5

investigatory practices of the police in this case but did not speak with the victim or any of the police officers involved in the case. Id. at p. 56-63.

## II. Legal Analysis

In his Statement, Defendant raises the following allegations of error:

1. The trial court erred in not granting a new trial based upon insufficiency of evidence. The verdict rendered in this matter is so contrary to the evidence presented that it shocks the sense of justice and requires the granting of a new trial imperative so that justice may be given another opportunity to prevail.

2. The underlying convictions in this matter are against the weight of the evidence in that there was insufficient evidence to prove the Commonwealth's allegations and theory of the case. There was not sufficient evidence presented to enable the fact-finder to find every element of each crime beyond a reasonable doubt.

3. The evidence that was presented was so weak and inconclusive in regard to several elements to [sic] the crimes that as a matter of law no probability of fact may be drawn from the circumstances.

4. When taken as a whole, the trial court failed to properly instruct the jury as to the application of the law and the Commonwealth's burden of proof.

5. The trial court erred in the administration of the jury charge at trial. Moreover, the Court erred in not granting a new trial based upon the deficient charge. It is well settled that when reviewing a jury charge, an appellate court must examine the trial court's instruction in its entirety, against the background of all evidence presented, to determine whether error was committed. In the instant matter, when considered as a whole, the charge was inadequate, unclear, and confused the jury on material issues of fact and law.

6

6. The trial court abused its discretion and committed reversible error by imposing a sentence that was unreasonable for the following reasons:

    a. The sentence imposed was unreasonable and excessive under the circumstances of the case;

    b. The court's articulated reasons in support of the underlying sentence were insufficient, unreasonable and an abuse of discretion; and

    c. The court failed to adequately consider the Defendant's age, background, family history, and limited criminal history.

## A. Vagueness of Defendant's Statement

As a preliminary matter, when Defendant's Statement is reviewed, it is unclear as to exactly which issues Defendant is raising due to its boilerplate nature. Failure to support a claim of error with at least minimal specificity renders the claim waived.

Pa.R.A.P. 1925(b) provides in pertinent part:

4) *Requirements; waiver.*

(i) The Statement shall set forth only those errors that the appellant intends to assert.
(ii) The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issues to be raised for the judge. The judge shall not require the citation to authorities or the record; however, appellant may choose to include pertinent authorities and record citations in the Statement.
(v) Each error identified in the Statement will be deemed to include every subsidiary issue contained that was raised in the trial court...
(vii) Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.

Pa.R.A.P. 1925(b)

"[A] concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no concise statement at all." Commonwealth v Dowling,

7

778 A.2d 683, 686 (Pa.Super. 2001). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." In re Estate of Daubert, 757 A.2d 962, 963 (Pa. Super. 2000). "Even if the trial court correctly guesses the issues Appellant raises on appeal and writes an opinion pursuant to that supposition, the issue is still waived." Commonwealth v. Heggins, 809 A.2d 908, 912 (Pa. Super. 2002). Defendant's Statement fails to properly preserve his allegations of error. This court would respectfully suggest that Defendant has waived his allegations of error because they are too vague for this court to be able to prepare a legal analysis which is pertinent to those issues and not merely speculative.

Alternatively, in the event it is determined that Defendant has not waived his appellate argument, we recommend that our judgment of sentence be affirmed since no error was committed. We note that, in his Statement, Defendant has conflated issues relative to his challenges to the sufficiency and weight of the evidence. We shall respond to both allegations of error separately.

### B. Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence presented by the Commonwealth. The standard applied in reviewing the sufficiency of the evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Commonwealth v. Evans, 901 A.2d 528, 532 (Pa. Super. 2006). In addition, the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Id. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Id.

8

The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Commonwealth v. Lehman, 820 A.2d 766, 772 (Pa. Super. 2003). If the fact finder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict. Commonwealth v. Wood, 637 A.2d 1335, 1343 (Pa. Super. 1994). The standard applies equally to cases in which the evidence is circumstantial, rather than direct, as long as the evidence as a whole links the accused to the crime charged beyond a reasonable doubt. Commonwealth v. Wright, 865 A2d 894, 910 (Pa. Super. 2004).

## 1. Sufficiency: Simple Assault

Defendant was convicted of simple assault pursuant to 18 Pa.C.S. § 2701(a)(3), which directs that a person is guilty of simple assault if he "attempts by physical menace to put another in fear of imminent serious bodily injury."

At trial, Defendant denied that he was L.Q.'s assailant. He admitted that he spoke to her, but denied that he ever got out of his vehicle or assaulted her. Contrary to Defendant's assertion, there was sufficient evidence presented establishing that Defendant was the perpetrator of these offenses. In her statement to police, L.Q. described her assailant as having been dressed in black clothing. Although Defendant was wearing a light colored shirt when Officer Sheridan spoke to him, the officer described finding a navy blue coat, so dark it could be mistaken for black, on the passenger seat of Defendant's vehicle. Defendant was wearing a red hat at the time Officer Sheridan approached him, and the victim described seeing a red hat on the dashboard of the car driven by her assailant, which was only a car length away when he first spoke to her. After the victim elbowed her assailant, she turned back to see who it was and soon thereafter she readily

9

identified both Defendant and the SUV when Officer Sheridan drove her around the neighborhood. Both the victim and the officer testified that Defendant and his SUV smelled of marijuana, and the officer testified that he found two golf ball size bags of marijuana in plastic baggies in the center console of Defendant's SUV. Defendant, on the other hand, testified that he never left his vehicle and only told the victim that she should get out of the street.

Simply stated, the jury evidently accepted the testimony of the prosecution's witnesses in reaching their verdict. Issues of credibility are left to the finder of fact, who is free to accept all, part, or none of a witness's testimony. Commonwealth v. Andrulewicz, 911 A.2d 162, 164 (Pa. Super. 2006). Questions of doubt are for the finder of fact, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the totality of the circumstances. Id. Only when the evidence offered to support the verdict is in contradiction to the physical facts, or in contravention to human experience and the laws of nature, can the evidence be considered insufficient as a matter of law. Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000). A mere conflict in the testimony of the witnesses does not render the evidence insufficient. Commonwealth v. Rabold, 920 A.2d 857, 859 (Pa. Super. 2007). The evidence presented by the Commonwealth was sufficient to establish that Defendant was L.Q.'s assailant[9].

Additionally, the Commonwealth established the following elements in order to prove the Defendant committed simple assault by physical menace: (1) that he attempted to put the victim in fear of imminent serious bodily injury, and took a substantial step toward that end, (2) that he used physical menace to do this, and (3) that it was his conscious object or purpose to cause fear of serious bodily injury. Commonwealth v. Little, 614 A. 2d 1146, 1151 (Pa. Super. 1992). When

---

[9] Specifically, in this regard, the jury was able to view the photograph of the jacket that was seized from the SUV in assessing the credibility of the testimony of the victim and Officer Sheridan.

10

viewed in the light most favorable to the Commonwealth as verdict winner, the evidence presented at trial is sufficient to prove all of the elements of the crime.

"Serious bodily injury" is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301; Little, at 1151. The evidence showed that when the adult male Defendant, who outweighed the thirteen-year-old victim by thirty pounds, grabbed her under her arms, he used physical menace constituting the required "substantial step" toward attempting to put the victim in fear of serious bodily injury.

The evidence also showed that it was Defendant's conscious object or purpose to put L.Q. in fear of imminent serious bodily injury as result of his actions.

Intent is defined as follows:

(1) A person acts intentionally with respect to a material element of an offense when:

> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result

18 Pa.C.S. 302(b)

"Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." Commonwealth v. Russell, 460 A.2d 316, 321 (Pa. Super. 1983). *And see* Commonwealth v. Thomas, 350 A.2d 847, 849-50 (Pa. 1976) ("A finder of fact is not bound by an actor's stated intention but may find that he intended the natural and probable consequences of his act.") The circumstances presented indicate that Defendant intended to put the victim in *fear* of serious bodily injury and this intent can be inferred from his actions.

Defendant's conduct in driving past a thirteen-year-old girl and asking her name, circling a deserted street and again driving past her despite having received no response, then exiting his car, pretending he was going into a house, but instead coming around behind her and grabbing her

11

under the arms, evidences his intent and attempt to put the victim in *fear* of imminent serious bodily injury. The victim testified that there was no one else on the street and that she was scared that she would not have the strength to fight back against her assailant. She said that she thought that something bad was going to end up happening to her and that she thought that she might get killed. Notably, Officer Sheridan testified that upon his arrival at her home after the incident, the victim was "shaking," "very nervous, very scared, [and] very upset." [10]

This was not an accidental encounter where Defendant bumped into the victim causing her to become scared. Defendant purposefully approached a thirteen-year old girl alone on the street not once but twice (in his vehicle and then on foot), came up behind her, and grabbed her under her arms. A person does not need to verbally threaten the victim in order to commit simple assault by physical menace. Little at 1153. Defendant's actions demonstrate that he intended the natural and probable consequences of his act and that he attempted by physical menace to put the victim in fear of imminent serious bodily injury. Accordingly, the evidence was sufficient to establish the elements of simple assault by physical menace pursuant to section 2701(a)(3).

## 2. Sufficiency: Criminal Attempt – False Imprisonment

The Commonwealth also sustained its burden of proving every element of attempted false imprisonment beyond a reasonable doubt. In order to attempt to commit an offense, a person must "with intent to commit a specific crime" do "any act which constitutes a substantial step toward the commission of that crime." 18 Pa. C.S.A. § 901(a). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any

---

[10] This court recognizes that whether L.Q. was actually fearful is irrelevant and that the issue is what the Defendant attempted. Although the Commonwealth need only prove that Defendant attempted to put the victim in fear of imminent serious bodily injury and not that the victim was *actually* in fear, in this case the Commonwealth presented evidence that she did indeed fear for her life in addition to presenting evidence of Defendant's actions. *See, Little, supra,* at 1152.

12

longer focus on the acts remaining to be done before actual commission of the crime." Commonwealth v. Gilliam, 417 A.2d 1203, 1205 (Pa. Super. 1980).

The statute prohibiting false imprisonment provides that "if the victim is a person under 18 years of age, a person who is not the victim's parent commits a felony of the second degree if he knowingly restrains another unlawfully so as to interfere substantially with his liberty." 18 Pa.C.S.A. § 2903. The offense of false imprisonment covers restraints which are less serious than those necessary for kidnapping and unlawful restraint. In re M.G., 916 A.2d 1179, 1181-1182 (Pa. Super. 2007). Our Superior Court determined that the legislature intended false imprisonment to cover restraints where a defendant knowingly restrains an individual's liberty by interfering "in an ample or considerable manner." Id. at 1182.

A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. 302 (b)

Here, Defendant, who was not L.Q.'s parent, approached the thirteen-year-old victim while she was walking home from school and grabbed her under her arms in a "bear hug" grab. "Where one does not verbalize the reasons for his actions, we are forced to look to the act itself to glean the intentions of the actor. Where the intention of the actor is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct. Commonwealth v. Meredith, 416 A.2d 481, 485 (Pa. 1980). As previously discussed, Defendant did not accidentally bump into the victim on the street. Rather, while Defendant was still in his car, he asked the victim for her name, then drove around the block a second time before parking, exiting the car, and acting as if he was going into a house before approaching her from behind and grabbing her under her

13

arms. The Commonwealth established that, in grabbing her under the arms, Defendant was intentionally taking a substantial step toward restraining L.Q. unlawfully so as to interfere substantially with her liberty. It is clear that when he grabbed her under her arms, Defendant attempted to interfere with L.Q.'s liberties in an "ample or considerable manner."

The record shows that Defendant's attempt to restrain L.Q. was unexpectedly cut short when she elbowed him and she was able to run away. The fact that the length of time he was able to restrain her was stopped sooner than he may have intended does not require a different result. *See*, In re M.G., *supra*. (Evidence was sufficient to show that assailant interfered substantially with the victim's liberty after locking her in her bedroom and touching her in a sexual manner for less than two minutes before being thwarted by the victim's sister banging on the door.)

Because the jury here could reasonably have determined that all of the necessary elements of criminal attempt at false imprisonment were established, Defendant's allegation of error must fail.

### 3. Sufficiency: Harassment

In addition to the jury's verdicts of guilty for the offenses of simple assault and criminal attempt at false imprisonment, this court also found Defendant guilty of the summary offense of harassment. "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person. . . strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same." 18 Pa.C.S. 2709(a)(1)

"An intent to harass may be inferred from the totality of the circumstances." Commonwealth v. Cox, 73 A.3d 719, 720 (Pa. Super. 2013), *reargument denied*, (Pa. Super. 2013). The facts in this case support a conviction under § 2709(a)(1) in that there was indeed physical contact and, under the circumstances, a reasonable inference of intent to alarm the victim.

14

## C. Weight of the Evidence

Defendant also claims that his convictions are against the weight of the evidence. "A verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice." Commonwealth v. Rivera, 983 A.2d 1211, 1225 (Pa. 2009).

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Commonwealth v. Whiteman, 485 A.2d 459 (Pa. Super. 1984) . . . An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Commonwealth v. Brown, 648 A.2d 1177 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Thompson v. City of Philadelphia, 493 A.2d 669, 673 (Pa. 1985). A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence, do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.*

Commonwealth v. Widmer, 744 A.2d 745, 751–52 (Pa. 2000)

Here, Defendant's allegation of error does not specify which facts are "so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." Widmer, *supra*, at 751-52. Defendant does not argue that the jury ignored any particular facts to which it should have given greater weight. Although Defendant related a different version of the events, as discussed previously, issues of credibility are resolved by the fact finder. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. Cox, *supra*, at 722.

In this case, it was not unreasonable for the jury to find the testimony of the victim and Officer Sheridan credible while disbelieving the testimony of Defendant. The jury's finding that Defendant was guilty of simple assault and criminal attempt at false imprisonment and this court's

15

finding that Defendant was guilty of harassment are findings supported by the evidence presented by the Commonwealth. The verdict of guilty is certainly not so contrary to the evidence as to "shock one's sense of justice." *See,* Commonwealth v. Rivera, *supra,* at 1225.

## D. Jury Instructions

Next, Defendant alleges that "when taken as a whole, the trial court failed to properly instruct the jury as to the application of the law and the Commonwealth's burden of proof" and that this court "erred in the administration of the jury charge at trial."

"The trial court has wide discretion in phrasing jury instructions, and absent an abuse of discretion or an inaccurate statement of law, there is no reversible error." Commonwealth v. Wesley, 753 A.2d 204, 210 (Pa. 2000, citing Commonwealth v. Hawkins, 701 A.2d 492, 511 (Pa. 1997), *cert. denied,* 523 U.S. 1083 (1998).

This court properly instructed the jury as to both the application of the law and the burden of proof. Before the start of testimony, this court instructed the jury that, "[u]nder our constitution, the Defendant is presumed innocent unless and until he is proven guilty. The District Attorney's Office, as counsel for the Commonwealth, has the burden of proving him guilty beyond a reasonable doubt." N.T. Jury Trial, 9/17/2019, at p. 10, l. 20-23. After the record was closed and prior to deliberations, we instructed the jury with regard to the Commonwealth's burden of proof as follows:

> A fundamental principle of our system of criminal law is that the Defendant
> is presumed to be innocent. The mere fact that he was arrested and accused of
> a crime is not any evidence against him. Furthermore, the Defendant is presumed
> innocent throughout the trial and unless and until you conclude based on careful
> and impartial consideration of the evidence that the Commonwealth has proven him
> guilty beyond a reasonable doubt. It is not the Defendant's burden to prove that he
> is not guilty. Instead, it is the Commonwealth that always has the burden of proving
> each and every element of the crime charged and that the Defendant is guilty of that
> crime beyond a reasonable doubt.
> A person accused of a crime is not required to present evidence or prove

16

anything in his own defense. If the Commonwealth's evidence fails to meet its burden then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt that the Defendant is guilty then your verdict should be guilty. Although the Commonwealth has the burden of proving that the Defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt and to a mathematical certainty nor must it demonstrate the complete impossibility of innocence.

A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of the crime.

A reasonable doubt must be a real doubt, it may not be an imagined one nor may it be a doubt manufactured to avoid carrying out an unpleasant duty. To summarize, you may not find the Defendant guilty based on a mere suspicion of guilt. The Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt. If it meets that burden, the Defendant is no longer presumed innocent and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden then you must find the Defendant not guilty.

Id. at p. 97-99.

With regard to the remaining allegations of error concerning the jury charge, Defendant does not cite to the portions of the instructions where this court allegedly erred in instructing the jury. Nor does Defendant point to any way in which this court erred in administering the charge. Because Defendant is not clear as to how the instructions were in error, this court is "impeded in its preparation of a legal analysis which is pertinent to those issues" and Defendant's allegations of error are considered waived. *See,* In re Estate of Daubert, 757 A.2d 962, 963 (Pa. Super. 2000).

### E. Abuse of Discretion- Sentencing

Finally, Defendant claims that this court abused its discretion in sentencing as follows:

1. The sentence imposed was unreasonable and excessive under the circumstances of the case;

2. The Court's articulated reasons in support of the underlying sentence were insufficient, unreasonable, and an abuse of discretion; and

17

3. The court failed to adequately consider the age, background, family history, and limited criminal history of the Defendant.

Defendant challenges the discretionary aspects of his sentence and again fails to raise a cognizable claim. To be reviewed on the merits, a challenge to the discretionary aspects of sentence must raise a substantial question that the sentence imposed is not appropriate. Commonwealth v. Pennington, 751 A.2d 212, 215 (Pa. Super.2000). "The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. In order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." Commonwealth v. Bishop, 831 A.2d 656, 660 (Pa. Super. 2003).

Although his sentence was within the sentencing guidelines' standard range, Defendant argues that this court failed to adequately consider the mitigating factors of Defendants' age, background, family history, and limited criminal history. An argument that the sentencing court failed to consider mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for appellate review. Commonwealth v. Radecki, 180 A.3d 441, 469 (Pa. Super. 2018); Commonwealth v. Hanson, 856 A.2d 1254, 1257-58 (Pa. Super. 2004). However, Defendant further contends that his sentence was excessive and unreasonable under the circumstances of the case. The Superior Court has held in certain circumstances that "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question." Commonwealth v. Raven, 97 A.3d 1244, 1253 (Pa. Super. 2014), *citing* Commonwealth v. Mouzon, 812 A.2d 617, 627 (Pa. 2002).

Even if Defendant's discretionary aspect of sentencing claim were determined to raise a substantial question, he would still not be entitled to relief. This case does not involve

18

circumstances where the application of the guidelines would be clearly unreasonable or excessive. Defendant came up from behind a thirteen-year-old girl as she was walking home from school and grabbed her under her arms, causing her a significant amount of fear. The victim testified that there was no one else on the street and that she was scared that she would not have the strength to fight back against her assailant. She said that she thought that something bad was going to end up happening to her and that she thought that she might get killed. Officer Sheridan testified that upon his arrival at her home soon after the incident, the victim was "shaking," "very nervous, very scared, [and] very upset." Under the circumstances, an aggregate, standard range sentence of 24 to 60 months incarceration is appropriate.

Pennsylvania precedent has repeatedly held that sentencing is a matter vested in the sound discretion of the sentencing judge, and the sentence will not be disturbed on appeal absent a manifest abuse of discretion. Commonwealth v. Antidormi, 84 A.3d. 736, 760 (Pa. Super. 2014).

An abuse of discretion in this regard is not shown merely by an error in judgment. "Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. Commonwealth v. Littlehales, 915 A.2d 662, 665. (Pa. Super. 2007), quoting Commonwealth v. Fullin, 892 A.2d 843, 847 (Pa. Super. 2006); Commonwealth v. Gonzalez, 109 A.3d 711, 731 (Pa. Super. 2015).

In determining whether a sentence is unreasonable, an appellate court considers: 1) The nature and circumstances of the offense and the history and characteristics of the defendant; 2) The opportunity of the sentencing court to observe the defendant, including any pre-sentence investigation; 3) The findings upon which the sentence was based; and, 4) The guidelines

19

promulgated by the commission. § 42 Pa.C.S. 9781(d); <u>Commonwealth v. Smith</u>, 673 A.2d 893, 895 (Pa. 1996).

Where a sentence is within the standard range of the sentencing guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. <u>Commonwealth v. Moury</u>, 992 A.2d 162, 171 (Pa. Super. 2010). "The trial court is vested with broad discretion in determining the defendant's sentence since the court is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." <u>Commonwealth v. Begley</u>, 780 A.2d 605, 643 (Pa. 2001). "When fashioning a sentence, the trial court must consider the factors set out in 42 Pa.C.S.A. § 9721(b) (requiring sentence consistent with protection of public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of defendant), and impose an individualized sentence." <u>Commonwealth v. Mola</u>, 838 A.2d 791, 793 (Pa. Super. 2003).

Pennsylvania "employs an indeterminate sentencing scheme." <u>Commonwealth v. Stemple</u>, 940 A.2d 504, 508 (Pa.Super. 2008). "Under such a scheme, a sentencing court, when imposing a penalty of confinement, announces a sentence that includes both a minimum and a maximum term." <u>Stemple</u>, *supra*, at 508 (referring to 42 Pa.C.S.A. § 9756(a)). "The trial court must consider each crime and each defendant in light of the total circumstances and fashion an appropriate sentence." <u>Mola</u>, *supra*, at 794. The minimum period of confinement must not exceed one half the maximum, with the highest possible maximum set for each offense by the legislature. 42 Pa.C.S.A. § § 9756(b), 9757; *See also,* 18 Pa.C.S.A. § § 1103-1105. The maximum penalty for false imprisonment, a felony in the second degree, is imprisonment not to exceed ten (10) years. 18 Pa. C.S.A. § 106. The maximum penalty for simple assault, a misdemeanor in the second degree, is imprisonment not to exceed two (2) years. <u>Id.</u>

20

Prior to Defendant's sentencing hearing, this court ordered the completion of a pre-sentence investigation report ("PSI"), which we reviewed before the sentencing hearing. N.T. Sentencing Hearing, 11/14/2019, at p. 2; 6-7. Where the sentencing court had the benefit of a PSI, it can be assumed that the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating statutory factors." Commonwealth v. Moury, 992 A.2d 162, 171 (Pa. Super. 2010). "It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand." Commonwealth v. Devers, 546 A.2d 12, 18 (Pa. 1988). "A pre-sentence report constitutes the record and speaks for itself." Id. *And see,* Commonwealth v. Johnson-Daniels, 167 A.3d 17, 26 (Because the trial court acknowledged the PSI report at the time of sentencing, the court satisfied the requirement for placing the reasons (for its decision) on the record.)

In the instant matter, this court was clearly aware of Defendant's employment, criminal history, and prior record score of two as it was both listed in the PSI and further detailed on the record by his counsel at the time of sentencing. Id. p. 8-9. At sentencing, Defendant's counsel discussed the fact that Defendant's criminal history was remote in time and that he had stayed out of the criminal justice system for the past six years. Id. at p. 5, l. 22-25. This court read the character references submitted on behalf of Defendant. Id. at p. 2, l. 1-22. We heard Defendant aver his innocence at the time of sentencing and indicated to him that we read and reviewed his version of events in the PSI. Id. at p. 6-7. Defendant does not claim that the court was unaware of - or misinformed about – the facts surrounding his case. Defendant is asking that the appellate court substitute its judgment regarding an appropriate sentence for that of this court. "Such a statement does not raise a substantial question that the sentence imposed was in fact inappropriate." Commonwealth v. Williams, 562 A.2d 1385, 1388. (Pa. Super. 1989).

21

COMMONWEALTH OF PENNSYLVANIA     :    IN THE COURT OF COMMON PLEAS
                                              :       OF LUZERNE COUNTY
                                              :

vs.                                 :       <u>CRMINAL DIVISION</u>
                                              :

EINSTEIN LIMA                        :       NO.   805   OF   2019

## ORDER

AND NOW, this 21th day of __July__, 2020, it is hereby **ORDERED AND DIRECTED** that the attached opinion is entered of record pursuant to Pa.R.A.P. 1925(a).

It is **FURTHER ORDERED AND DIRECTED** that the Luzerne County Division of Judicial Services and Records (a/k/a the Luzerne County Clerk of Courts) shall transmit the record of the above-captioned case to the Prothonotary of the Superior Court pursuant to Pa.R.A.P. 1931 **within three (3) days** from the date of this Order.

BY THE COURT:

_____
JOSEPH F. SKLAROSKY, JR.,       J.

Copies:

District Attorney

William D. Thompson, Esquire
604 N. State Street
Clarks Summit, PA 18411